## No. 13,708.

### In the Matter of Browne & Jenkins Company, Limited, in Liquidation.

#### Syllabus.

1. The liquidator of a partnership or corporation which has been dissolved by vote of the parties in interest and gone into liquidation is without authority to continue its business as a going concern, and will be held to strict responsibility for so doing.

2. Where several parties carry on business of a commercial partnership in the name of a limited corporation which has never had the capital required to give existence to such a corporation, its liquidator, who was one of the partners, has no grounds to complain of a judgment on final liquidation which does not extend his liability beyond that for which he would be legally liable as a partner.

APPEAL from the Civil District Court, Parish of Orleans.— Theard, J.

*Hugh C. Cage,* for Plaintiffs, Appellees.

*Benjamin Rice Forman,* for Heirs of C. W. Sterry, Intervenors, Appellees.

*Florance & Rosen,* for Lewis Voight & Sons Co., Intervenor, Appellee.

*Dufour & Dufour,* for National Wall Paper Co., Intervenor, Appellee.

*F. Rivers Richardson,* for Administrator, J. Y. Gilmore, Intervenor, Appellee.

TERM OF 1901-1902. 487

In the Matter of Browne & Jenkins Co., Ltd., in Liquidation.

## Statement of the Case.

The opinion of the court was delivered by

Nicholls, C. J. On the 21st of June, 1897, A. H. Browne, Jacob M. Jenkins, and Douglas Jenkins, presented a petition to the Civil District Court for the Parish of Orleans in which they alleged that on the 19th of that month, at a general meeting of the stockholders of the Browne & Jenkins Co., Ltd., a corporation organized under the laws of Louisiana, the said corporation was dissolved and its affairs placed in liquidation, and that they, the petitioners, were elected commissioners to liquidate the same under the provisions of its charter and according to law; that they were willing to accept said position and to furnish such bond as the court might deem necessary. That it was proper and necessary under the facts that the court should confirm and ratify the proceedings then had and the appointment of petitioners as liquidating commissioners; that they be made officers of the court and that it should take charge of the liquidation and assets of the corporation and that the liquidation should proceed under the orders of the court. That to that end an inventory be taken. That so far as advised the corporation was solvent, but that it owed debts of different rank and character and it would be necessary to marshal the assets and determine the relative rank and rights of the creditors in due course of law, and under proceedings usual in cases of involved or insolvent concerns.

They prayed accordingly.

The District Court acted upon this petition. It homologated and ratified the proceedings of the meeting of stockholders and the appointment of petitioners as liquidating commissioners of the corporation; it ordered that upon their taking the oath and furnishing bond in the sum of $6,000, letters issue to them as liquidating commissioners; that they proceed to liquidate and settle the business affairs of said corporation under the orders, direction and control of the court. It directed that the assets of the corporation be taken possession of by the court; that an inventory be made and that the notary taking the same furnish a list of the debts and liabilities of the corporation as far as he could ascertain the same.

On the 27th of June an inventory of the property of the corporation was made by E. L. Simonds, notary, showing assets to the amount of seventeen hundred and seventy dollars and thirty-seven cents.

The three persons appointed liquidators qualified and letters as such issued to them on the 22nd of June, 1897, but on June 28th the court accepted the resignation of A. H. Browne and Douglas Jenkins, upon their suggestion that the affairs of the corporation could, in their opinion, be properly liquidated by the other commissioner, Jacob M. Jenkins, and that their services were unnecessary. The district judge, in his reasons for judgment, gives the following detailed account of subsequent occurrences:

"Thereupon began what was intended as a liquidation, but what was merely a continuance of the affairs of the admittedly insolvent corporation, as though no liquidation proceedings had been initiated, and as though the corporation was a going concern in a perfectly solvent condition. The only effect of the court's order for a liquidation seems to have been to prevent the creditors from bringing suit. So far from proceeding to dispose of and marshal the assets with a view to an equal distribution among all the creditors, the liquidating commissioner, without applying for or obtaining the necessary authority from the court, went on with the business uninterruptedly, soliciting and filling contracts, making purchases of goods and employing labor, disbursing and collecting money, and otherwise carrying on the business of the corporation as though no legal proceedings were pending and as though the court and the creditors had no concern in what he was doing. Among other acts of the liquidating commissioner was the employment of his brother, Douglas Jenkins, who had just resigned as one of the commissioners, as book-keeper at a monthly salary, at the same time that he himself was drawing a monthly compensation as liquidator. In the meantime not a cent was being applied to the extinguishment of the debts due by the corporation prior to the liquidation. The liquidator, apparently ignorant of his duty to the court, failed to seek advice from his counsel, and acted throughout upon the assumption that he knew all about the law and had no one to consult.

"This state of things continued until February 28th, 1899, when one of the creditors, The National Wall Paper Company, averring that the liquidator had been administering the property of the defunct corporation for nearly two years, and had, in course of administration, collected moneys which should be accounted for and distributed, ruled him to show cause why he should not file an account and tableau of distribution. This proceeding was followed on April 11th, 1899, by a

rule taken on the liquidators by another creditor, The Lewis Voigt and Sons Company, to show cause why all the property of the Browne & Jenkins Company, Limited, which had been under administration for nearly two years, and which had not been converted into cash, should not be sold at once by the liquidator according to law. Upon the trial of this latter rule it was ordered by the court that an inventory of all the property now in the hands of the liquidator be taken by a notary, assisted by appraisers, and that said property be sold at public auction by a designated auctioneer, for cash, after ten days advertisement and according to law. As ordered, an inventory was taken on May 16, 1899, which showed assets in the liquidator's hands aggregating in value $3,855.86. The auction sale of these assets realized only $301.45 gross.

"It was not until November 3, 1899, and not until he had been threatened with punishment for contempt of court, that the liquidator did file an account of his administration. That account, to which opposition has been made, is hardly worthy of consideration.

"After setting forth, as mere memorandum, the amount of the inventory taken on June 24th, 1897, $1,770.37, and the amount of the inventory taken on May 16th, 1899, before the sale, $3,855.86, the liquidator proposes to account only for the proceeds of sale amounting gross to .......................................... $301 45
and for cash in the hands of his attorney for costs, etc...... 375 00

or say a total of ..................................... $676 45
out of which must be deducted sundry privileged claims
    which are not contested and aggregate................ 262 56

leaving a balance of ............................. $413 89
for distribution among the ordinary creditors.

"The account was supplemented on April 16th, 1900, during the trial of the oppositions, by what purports to be a ' detailed statement of the business of Browne & Jenkins Company, Limited, in liquidation, from the date of the appointment of receiver to final sale'; which statement was filed in answer to opponent's repeated calls for the liquidators' books and to avoid punishment for contempt for refusing to respond to the calls. The statement was accompanied by such books as had been used by the liquidator. According to the first part of it the liquidator collected $16,770.61, and disbursed $16,395.61, showing an excess of

490 SUPREME COURT OF LOUISIANA,

In the Matter of Browne & Jenkins Co., Ltd., in Liquidation.

receipts over expenditures of $375.00, which, added to the $301.45 gross proceeds of sale of the stock, foots up the $676.45 for distribution. But an examination of the latter part of the statement discloses that there was an apparent profit, in 1897, of $1,429.14, as against a loss, in 1898, of $541.79, and a further loss, in 1899, of $452.62, or say a profit during the liquidator's entire administration of $434.73, instead of $375.00 as stated. And when called upon to specify the items of daily receipts and disbursements, and when asked to point out in the books the entries from which the statement was prepared, neither the liquidator nor his book-keeper could do so. The accounts and statements supplementary thereto are entirely inadequate, save as to certain items hereafter to be referred to, to assist the court in fixing the liquidator's liability under his trust.

"That liability, it seems to me, must be measured as follows:

"The first inventory placed only a nominal value upon the stock; its real value, as shown by the second inventory, was $3,855.86. It was error on the liquidator's part to allow this stock to be sold at auction, under order of court, for less than two-thirds of its appraisement. The sale, ordered in due course of liquidation of an insolvent concern, was judicial and subject to all the formalities prescribed by law for that character of sales. *Vide* Act 159 of 1898, which assimilates receivers and liquidators to syndics, also R. S. 688; C. P. 680; 7 N. S. 180; 2 R. 187, 201; C. C. 2184. If the liquidator thought the appraisement too high, he should have asked for a re-appraisement; for if the bids at the sale did not reach two-thirds of the appraisement, it was his duty to cause the property to be re-advertised and re-sold. Having allowed the stock to be sold for less than the amount prescribed by law, he is responsible for that amount, or, say, two-thirds of $3,855.86—$2,570.57, instead of $301.45 as appearing on the account.

"The liquidator is also responsible for the amounts paid to himself, to his brother, Douglas Jenkins, as book-keeper, and to A. H. Browne, as clerk, being respectively $1,344.45, $1,201.10 and $49.25; or say a total of $2,594.80. Aside from the fact that there was no authority asked for for the continuation of the business, or for the employment of the clerks, an authority which would hardly have been granted in view of the avowed insolvency of the dissolved corporation and the insufficiency of its assets for the payment of its debts, it is not permissible that the same two persons who had resigned the trust of liquidators, upon the representation that the liquidation could properly

be conducted by a single liquidator, should at once secure employment as clerks to assist in the liquidation, thus leaving to the one liquidator the entire commission presumably deemed too small for three, and burdening the liquidation with clerks' salaries. Besides, the clerical services of at least one of them, Douglas Jenkins, appears to have been of little, if any, value, his knowledge of book-keeping being so limited that he could not even explain the books kept by him. The liquidator can claim no other compensation for himself than the commission allowed by law of 5 per cent. on the amount to be distributed.

"Therefore I am of the opinion that the liquidator must be held to have for distribution the following amounts:

"Two-thirds of $3,855.56, the appraised value of the stock
    illegally sold .................................... $2,570 57
"Amount unduly paid to himself for labor ............... 1,344 45
"Amount unduly paid to Douglas Jenkins for labor....... 1,201 10
"Amount unduly paid to A. H. Browne for labor.......... 49 25
"Cash in the hands of H. C. Cage, attorney, for costs, etc.. 375 00

    "Total assets ..................................... $5,540 37

    "From this must be deducted:

"1st.—The privileged claims placed upon the account and not
    contested, amounting to .....................................$262 56
"2nd.—The liquidator's commission, 5 per cent. on
    $5,540.37 ......................................... 277 01
"3rd.—The claim of C. W. Sterry for rent from January
    1st, 1899, to June 1st, 1899, that being the time at which
    the leased premises were vacated—five months at $45—
    $225, less credit of $6, or say......................... 219 00
"With interest at 5 per cent. on $39 from February 1st, 1899, and like interest on instalments of $45 from the 1st of each succeeding month, and ten per cent. attorney's fees.

"Out of the balance, after payment of these privileged claims, there must be paid the following ordinary claims, which have been either proved or admitted:

"Lewis Voight and Sons Co............................. $951 05
"National Wall Paper Co............................... 2,090 38
"J. Y. Gilmore........................................ 51 00

"With legal interest from February 8th, 1898.

"The claims of the other ordinary creditors have not been proved and must be stricken from the account.

"It is therefore ordered, adjudged and decreed, that the account filed herein by J. M. Jenkins, liquidating commissioner, on November 3rd, 1899, be re-cast and amended as hereinabove stated and, that as amended, be approved and homologated and the funds distributed accordingly."

### OPINION.

The evidence shows that on ——————, ——, Jacob M, Jenkins, Douglas Jenkins, and A. H. Browne, having in view the carrying on the business of paper hangers and sellers of wall paper, went before a notary public in the City of New Orleans, and caused to be drawn up the charter of a limited corporation of which they declared themselves to be stockholders. The amount of the capital of the concern was entirely below that required by law for the creation and existence of such a corporation, none the less business was commenced and carried on for a long time in its name and as a corporation. Finding that the business was a failure, the parties met together, declared the "corporation" "dissolved" and placed "in liquidation" for settlement.

They appointed themselves liquidators and were, subsequently on their petition, recognized and confirmed as judicial liquidators by order of court. Two of these parties (A. H. Browne and Douglas Jenkins) immediately resigned as such and Browne appeared no longer thereafter in connection with its affairs. How much property belonged, in point of fact at the time of this dissolution, to the concern, does not appear, for the inventory taken at that time was evidently unreliable.

Instead of disposing of the property, collecting the outstanding debts due to it and paying the creditors, Jacob M. Jenkins, the remaining liquidator, ignoring the fact that the "corporation" had "resolved" itself out of existence and gone into liquidation, and ignoring the orders of court in respect to that matter, carried forward the business precisely as it had always been with the difference that Browne had disconnected himself from the concern and Douglas Jenkins, though continuing his connection with it, had withdrawn his name, and matters thereafter were conducted in the name of "Browne & Jenkins Co., Ltd., in liquidation."

Purchases were made and debts created by Jenkins, liquidator,

private sales effected by him also, contracts entered into and executed and moneys received paid out to third parties and drawn out by the two Jenkins' without consultation with, or orders or permission from any one. During the continuance of this condition of affairs, sixteen thousand dollars or more went into the hands of the liquidator. How much of this business was based upon the old stock of goods, and how much upon new purchases of new stock, does not appear. When certain parties, claiming to be creditors, finally brought matters to an end, it appeared, from a new inventory, that there was then in hand thirty-eight hundred and fifty-five and 56-100 dollars worth of stock. This stock was sold at auction for the price of three hundred and one and 45-100 dollars.

The liquidator being ruled into court for an account presented as such, that which is referred to by the district judge in his reasons tor judgment. Oppositions to this account were filed. On the trial of these oppositions the fact was developed, through testimony adduced therein, of the continuance of the business, as has been stated, and the receipt of the large amount mentioned was shown without any attempt to explain how this money was expended. It was made to appear, however, that Jacob M. Jenkins had drawn thirteen hundred and fifty-four and 45-100 dollars, and Douglas Jenkins had drawn twelve hundred and one and 10-100 dollars from this fund.

The District Court, with the light which it had before it, rendered the judgment which has been appealed from. Appellant claims that he has been harshly and unjustly treated; that he has acted throughout in good faith and in the interest of creditors. That had he sold the stock on hand at the time of going into liquidation, at public sale, it would have brought practically nothing; that the only way to give value to it was to sell it at private sale and to dispose of it through contracts made to hang it up, and this was done. That, from that standpoint, the services of his brother and himself became necessary; that those ser- vices were rendered and were paid for at rates for which like services of third parties would have justly and legally called. We would have been glad to have found good faith in these transactions, but we have not been able to do so. This whole business, from beginning to end, has been wrong. There was really no corporation formed. The busi- ness carried on under that name was in reality the business of Browne & Jenkins, not of Browne & Jenkins Co., Ltd. The debts created in that name were debts due by them.

It is no hardship and no injustice that J. M. Jenkins should be held personally to pay for those debts. That is what practically the judgment appealed from amounts to. If the judgment has been rendered against him for a sum in excess of debts, the parties will not be injured thereby.

We are of the opinion that the judgment appealed from was really for an amount smaller than the court would have been warranted in rendering under the evidence. It is shown beyond question that over sixteen thousand dollars went into the hands of the liquidator, while in office, and he made no showing of his disbursements, which would bring his indebtedness below that at which the court fixed it. If there be, in fact and law, an indebtedness to that amount and over, the ascertainments of the particular elements which go to make up the same becomes a matter of no moment. If there be any mistakes in that matter it is the fault of the appellant. Granting that he was entitled to have had credit for the disbursements which he made, he did not place the District Court in position to ascertain what they were.

He complains to this court of the action below, but we are in no better position as to details than that court. Were we to reverse the judgment, we would have to substitute in place of it a judgment to be rendered by ourselves. This we could not do with the *data* furnished us. We have not been asked to remand and, had such prayer been made, we would not have been justified in granting it. Appellant, though knowing precisely what he was called upon to prove, failed to make any proper showing.

For the reasons assigned, the judgment appealed from is hereby affirmed.