OVERTON, J.
 

 The Boland, Gschwind Company, Limited, was a manufacturer of steel products in the city of New Orleans. As a result of financial losses, the appointment of receivers became necessary, and Thomas Killeen and Edward Schwartz were appointed. At first the receivers were authorized to continue the business of the corporation, and were granted quite full powers in this respect, but after a while it was seen that the business could not be operated successfully. A rule was then taken on the receivers to show cause why the assets of the corporation should not be sold, the ‘proceeds of the sale distributed
 
 among
 
 the creditors, and the affairs of the corporation closed. Later the receivers made application to the court for authority to sell the movable property under their administration for the purpose of providing funds with which to pay debts. This property consisted of stock, bonds, office fixtures and furniture, met
 
 *569
 
 ehandise, and an Ivens centrifugal pump pattern. The real property had been previously sold by a mortgage creditor in foreclosure proceedings. The court in due course granted the application for the sale of the movable property and appointed an auctioneer to make the sale. The auctioneer, after due advertisement, sold most of the property, adjudicating each of the several items sold for less than two-thirds of its appraised value. The receivers then, through their counsel, a prominent firm of attorneys, no longer in existence, petitioned the court to confirm the sale and to. authorize them to deliver the property to the respective adjudicatees. The receivers attached to this application the return of the auctioneer, which shows each item of property sold, and the price for which it was adjudicated. The court, on the same day that the application was filed, granted an order confirming the sale and authorizing the receivers to deliver the property sold. The receivers then delivered it, and in due course filed a provisional account, which, we need not notice, and later a final account.
 

 The final account was opposed by 28 creditors, on the ground, among others, that the personal property belonging to the receivership, consisting of the accounts, the merchandise, the centrifugal pattern, and the office fixtures and furniture, above mentioned, had been illegally sold, in that each item thereof had been sold for less than two-thirds of its appraised value, and these opponents pray that the receivers be charged with the difference between that value and the price for which these assets were sold. This difference, in the aggregate, amounts to $9,521.-27. The lower court rendered judgment in their favor, and accordingly amended the final account by charging the receivers with that amount, and ordering them to distribute it among the creditors.
 

 We shall first consider the question whether or not it is necessary that the property of
 
 s
 
 receivership, sold at public auction, under orders of court, to raise funds with which to pay its debts and those of the corporation, may be sold for less than two-thirds of its appraised value.
 

 A receivers’ sale is, of course, a judicial sale. The lawmaker has provided no general rule as to how property shall be sold at judicial sales, in so far as relates to whether the amount bid shall bear proportion to an appraisement previously made. He has, however, provided special rules applicable to particular cases. For instance, article 680 of the Code of Practice regulates sales by the sheriff under execution. Article 990 et seq. of the same Code provides for the sale of succession property at the instance of a creditor. Article 1170 of the Civil Code provides for the sale of the property of vacant estates. Article 342 of the Civil Code regulates the sale of the property of minors, and article 2184 the sale of property ceded by debtors to their creditors uhder the state bankrupt law. In all of the foregoing instances, which include all kinds of judicial sales, in so far as suggested by counsel, and in so far as we are able to recall, with the exception of partition and receiver’s sales, the first offering must be made subject to and with reference to an appraisement previously made, except when that requirement may be and has been waived by the parties in interest. In some of the foregoing instances, the property offered must bring its appraised val- ’ ue, and in others two-thirds thereof, or else there can be no lawful adjudication. As to partition sales it is otherwise; while article 1324 of the Civil Code directs that they shall be preceded by an inventory, in which the property to be partitioned must be appraised, yet it is not necessary in them that the property bring a price bearing proportion to the appraisement. Bayhi v. Bayhi, 35 La. Ann. 527. This is an exception to what
 
 *571
 
 seems to be the general policy of the lawmaker, and the reason for the exceptibn is obvious.. The reason is that the law provides that no one shall be required to hold property in common with another. In order to make this provision the more effective the law permits the property to be sold in such sales without regard to its appraised value.
 

 It would seem from the foregoing observations that, unless good reason to the contrary appears, as in partition sales, the policy of the law is not to permit property to be sold at judicial sales without appraisement, or without reference to its appraised value, unless the parties in interest may waive and have waived the benefit of the law in this respect. No good reason appears why the law should make an exception as to receivers’ sales. The reason is as strong why property- offered at those sales should be offered subject to the benefit of an appraisement as it is in succession sales or in sales of the property of insolvent 'debtors, made by syndics, under the bankrupt laws of the state, when those laws are in force, or in sales made by the sheriff in the execution of moneyed judgments. The law, however, nowhere expressly provides that a receiver’s sale shall be made subject to appraisement. Act No. 159 of 1898, the receivership act, does not expressly so require. It does not follow, however, because the law does not expressly so provide that it contemplates that the sale may be made without the benefit of appraisement. In Metropolitan Bank v. New Orleans Brewing Association, 51 La. Ann. 1525, 26 So. 418, it was said (though the question there presented was not whether the price bid should bear proportion to the appraisement) that property offered at a receiver’s sale-must be offered subject to the laws regarding the ¿ppraisement of property at judicial sales. In International Harvester Co. v. Union Irrigation Co., 139 La. 843, 72 So. 375, where one of the questions- to be decided was whether there is authority in law for selilng property at receiver’s sale, at the second offering on 12 months’ bond for what it will bring, it was held that there was, and in passing on the question it was said:
 

 “This court held in Re Browne & Jenkins Co., 106 La. 490, 31 South. 67, that receivers’ sales of this kind [the sale of the assets of an insolvent corporation to close its affairs and pay its debts] were assimilated to syndics’ sales; and by article 2184, O. C., syndics’ sales are required to be made ‘at the same terms and under the same formalities that property seized on execution is sold;’ and by article 682, C. P., property seized under execution is required to be sold on 12 months’ credit after readvertisement for whatever it will bring, if at the first offering it does not bring two-thirds of its appraisement.”
 

 This decision, in effect, holds that, at a receiver’s sale, the property at its first offering must be offered under an appraisement, for articles 2184 of the Civil Code and 682 of the Code of Practice, construed together, authorize the sale of property o”n 12 months’ time only when it fails to bring at the first offering two-thirds of its appraised value.
 

 For the foregoing reasons our conclusion is that the property of an insolvent corporation, at a receiver’s sale, made to pay debts and close the affairs of the corporation, must be offered subject to the benefit of appraisement, and must bring, at the first offering, not less than two-thirds of its appraised value to make the sale thereof valid, and to authorize the delivery of the property to the purchasers.
 

 The receivers contend, however, that, although this should be found to be the law, still they are not liable for the reason that . they did not conduct the sale, but that it was conducted by an auctioneer appointed by the court, who made the adjudications. True, the sale was thus conducted and the. adjudications thus made, but the receivers
 
 *573
 
 delivered the property to the purchasers, and thereby caused the creditors to sustain a loss. By so delivering it they made themselves parties, as it were, to the unlawful adjudications.
 

 However, the receivers say that the sale was confirmed by the court, and that they were expressly authorized by it to deliver the property to the purchasers for the amounts bid, and for that reason they are not liable. The court granted such an order upon their application, but, is the order such a one as to afford them protection? In our opinion it is not. To begin with, judicial sales in this state, including receiver’s sales, are not required to be confirmed, nor is there any provision whatever for their confirmation. In other jurisdictions, or, at least, in most of them, confirmation is essential, and the court on confirming the sale is deemed the vendor. 24 Cyc. p. 6. But, as stated, confirmation is not required in this state, nor is there any provision of law whatever concerning it. In the absence of any such requirement or provision, it is difficult to see how any legal effect can he given the order of confirmation. But, as the sale was presented for confirmation, and as an order confirming it was granted, let us concede for the purposes of this case that the order is entitled to sufficient legal effect to protect the receivers in delivering the property, if given pursuant to the requirements for the granting of orders in receiverships, and see whether or not the receivers had any right to rely on it in making delivery. Section 8 of Act 159 of 1S98 (the receivership act) requires the clerk of the district court, in each parish of the state, to keep a book to be known as the “receivership book,” and to enter immediately therein notice of the filing of all petitions, motions, rules, or applications made in behalf of any one. The section then provides that—
 

 “No order shall be granted by the court until ten days after entry of such notice in the order books, except an order to show cause, or when circumstances in the opinion of the court require otherwise, and same is so stated in the order or decree.”
 

 The order, in this instance, was granted on the same day that the application was presented to the court. We doubt that,- when the order was signed, notice of the filing of the application had -been entered in the receivership book. Let us assume, however, that notice had been entered therein at that time; still it is manifest that it had not been so entered 10 days prior to the granting of the order. If any reason existéd for granting the order before the expiration of the 10 days’ notice, the reason is not stated in the order, though the law so requires. Hence in our view the order is absolutely null and void upon its face, and therefore afforded no protection whatever to the receivers in. delivering the property.
 

 It is argued that the receivers thought they had a right to deliver the property to the purchasers. That they so thought, which we do not question, does not relieve them from liability.
 

 Finding no error in the judgment appealed from, it is, for the reasons assigned, affirmed; the appellants to pay the costs of this appeal.