145 So. 113

## ALLEN v. LLANO DEL RIO CO. OF NEVADA.

### No. 30214.

Nov. 28, 1932.

Sidney I. Foster, of Leesville, for appellant.

L. D. Woosley and A. B. Cavanaugh, both of Leesville, for appellee receiver.

LAND, J.

The district court for the parish of Vernon appointed a receiver for the Llano Del Rio Company of Nevada, a communistic corporation organized under the laws of that state, and authorized to do business in this state.

Defendant company owns and operates farms, factories, and other enterprises, and consists of about 250 people who have invested their savings with the company, and who have accepted the colony as a home.

L. D. Woosley was appointed receiver July 1, 1927, and qualified July 6, 1927. He was authorized by the court to continue the business of the company as a going concern. His administration ended on April 9, 1928, when the judgment of the district court appointing him was set aside by this court in the case of Allen v. Llano Del Rio Co. of Nevada, 166 La. 77, 116 So. 675.

The case is now before us on appeal by the company from the judgment of the lower court, homologating the final account of the receiver, which was opposed by the company as to various items.

At the outset, we will state that the contention of the company that the receiver and his surety are responsible for the debts incurred during the receivership is not well taken.

Where a receivership is provoked without legal cause, its debts must be paid by the corporation, for those dealing or contracting with the receivership dealt or contracted with it through the receiver, and they have the right to look to it for payment. Reynaud v. Uncle Sam Planting & Mfg. Co., 152 La. 50, 92 So. 731.

In opposition to the final account of the receiver, the company opposed the following debts remaining unpaid at the close of the receivership:

(1) Attorney's fees, $1,250.

(2) Compensation for receiver, $3,000.

(3) Chas. L. Adams for auditing receiver's books, $250.

The receiver testified that the fee of $1,250 was for himself and Mr. Ferguson, an attorney of Leesville, who had been retained by him as his attorney for the period of the receivership, but that no fee for his services had been fixed.

The record shows that every petition presented during the receivership was prepared by the receiver, himself, who is a member of the Leesville bar; and that the only service that Mr. Ferguson, the retained attorney of the receiver, ever performed at all, was an unsuccessful attempt to enjoin the foreclosure by Kelly-Weber Company of a chattel mortgage for $1,590 on the live stock and farming implements on the rice ranch of the company, and for which service Mr. King, attorney for Kelly-Weber Company, received a fee of $200. There were no other suits filed against the receivership. Volume 1, 105, 106, 136.

As a fee of $100, in our opinion, would be fair compensation for services rendered by Mr. Ferguson in the injunction suit, the receiver in this case is claiming for himself attorney's fees of $1,150, in addition to compensation of $3,000 as receiver.

There has been no litigation for the receivership, and none against it, except the foreclosure suit above mentioned.

The court orders obtained by the receiver, as attorney, are all of routine character. He also made an inventory of the property of the company in Vernon parish.

George T. Pickett, manager of the company when it was placed in the hands of a receiver in July, 1927, still continued in that capacity during the receivership. He maintained at the office of the company the same system of bookkeeping and clerical work. The appointment of receiver did not take

from him, as manager, any authority as far as the industrial work was concerned. It still went on under his management and direction without any dictation or interference by the receiver. Volume 1, 132, 133, 134. Nor did the manager call upon the receiver for legal advice during the period of the receivership. Volume 1, 135.

The receiver admits that, after the property was delivered to him, it was operated just as it had been prior to the receivership.

The following testimony of the receiver is clear on this point:

"Q. Did you try to operate it just as they had operated it prior to the receivership?

"A. Yes, sir, I left them intact, as much so as it was possible to do." Volume 1, 77, 78.

"Q. In other words they made their own livelihood there at that place?

"A. Solely, yes sir—that is, I understood they did." Volume 1, 79.

"It being my desire to hold the property intact as well as I could until the Supreme Court had passed upon the judgment of the lower court appointing a receiver, and at the same time leave them as little undisturbed as possible in the operation of their affairs and business. I didn't take the books, the colony's books of accounts away from them, it being my desire for that reason that they might keep up with the accounts and give them that opportunity." Volume 1, 82.

"Q. As a matter of fact, you did not, as receiver, maintain any office on the premises of the property of the colony?

"A. No, sir, it was my desire, as stated, to disrupt the colony in their way of operating their affairs and business as little as possible." Volume 1, 97.

"Q. You didn't attempt to take control of the different plants, but left them in the same hands in so far as the foreman and the employees or the parties operating were concerned?

"A. Yes, sir, the operations were, as stated, left with them." Volume 1, 98.

Besides, W. H. Fread, commercial agent of the company during the receivership, did the purchasing and called on the receiver for requisition sheets from time to time. Volume 1, 81, 112.

The amount of time given by the receiver to the administration of the company, whose colony is located about one mile from Leesville, is shown by the following testimony of the receiver himself: "*I endeavored to keep up my law practice during the receivership. That accounts for one reason that I couldn't keep the books and do the things I had to do* and explaining and talking and so on." Volume 1, 111.

Only the sum of $17,732.48 was received and disbursed by the receiver during his entire term of office.

Under all of the facts of the case, we are constrained to hold that the receiver, in this case, exercised his power no further than to demand that all of the income of the company be turned over to him, and that his approval be obtained on all contracts before they were made. Beyond this, he had nothing to do with the company except, as he says, to listen to dissatisfied members, and en-

deavor to adjust the differences between them and the manager of the colony, who was left in control of all of its farms, factories, and other industries. The receiver's attorney's fees are therefore reduced from $1,250 to $625, and the receiver's compensation is reduced from $3,000 to $1,500.

■ The company also opposed the item of $250 of C. L. Adams for auditing the receiver's books.

This audit, of course, shows the cash received and where from, and the cash paid out and what for, during the receiver's term of office. C. L. Adams graduated from Long's Business College in Jackson, Miss., and has kept books for over twenty years. Both C. L. Adams and the receiver, who is himself an experienced bookkeeper, testify that the sum of $250 is fair compensation for the services rendered, and there is not one scintilla of evidence in the record to the contrary.

■ Without a statement of cash received and cash paid out during his administration, it would not be possible for the receiver to render a final account, as he is required by law to do, and to obtain his final discharge. It was not the duty of the receiver to furnish the audit of his books gratis, because he happened to be a competent accountant. Had he done the work himself, the company would have had to pay for it.

■ It is well settled that: "The taking of an inventory and the making of an appraisement of property, and the filing of a statement of liabilities, are *proper preliminary acts of administration on the part of a Receiver*, and the same should ordinarily be done within a reasonable time after he takes charge." In re Receivership of the New Iberia Cotton Mill Co., 109 La. 875, 33 So. 903. (Italics ours.)

And in Smith on Receivership, at page 592, it is said: "A proper accounting from time to time, *as well as his final report*, renders it incumbent on him to carefully inventory the estate, property, goods and effects that come into his hands." See, also, A. & E. Encyc. of Law (1st Ed.) vol. 20, p. 185; Gluck & Becker on Receivers of Corporations (2d Ed.) p. 556. (Italics ours.)

The item of $250 to C. L. Adams is therefore approved and allowed.

Paragraph 12 of the opposition of the company to the final account of the receiver sets out the particular items opposed as items paid *on court orders:*

(1) Office expense, $286.92.

(2) A. B. Dennis for salary as assistant to receiver, $1,038.50.

(3) C. L. Adams, making inventory, $150.

The opposition of the company to the item of office expense, $286.92, was withdrawn as soon as it was shown on the trial that this item was spent in maintaining the office of the colony, with which the receiver was in no way connected. Volume 1, 97.

■ On July 9, 1927, *the receiver obtained an order* authorizing him to employ A. B. Dennis as assistant to the receiver. The above petition and order were filed for record in the Receivership Order Book July 22, 1927, and recorded therein August 16, 1927. Volume 1, 53.

On October 6, 1927, *the receiver obtained an order* fixing the salary of A. B. Dennis, as assistant to the receiver, at $150 per month. Volume 1, 24; volume 2, 278.

The petition and order, fixing the compensation of A. B. Dennis as assistant to the receiver, dated October 6, 1927, were filed for record November 7, 1927, in the Receivership Order Book, and were recorded in the Receivership Order Book December 18, 1927. Volume 1, 52.

On December 14, 1927, *the receiver obtained an order* to pay C. L. Adams $150 for assisting in making inventory, examining receiver's books, and estimating timber, claiming 28 days' service. Volume 2, 265, 266.

The above petition and order were filed in the Receivership Order Book December 16, 1927. Volume 1, 51.

On February 6, 1928, *the receiver obtained an order* authorizing the payment to Troy Morrison of $50 for services as bookkeeper for 19 days' work, beginning on April 13th and ending on May 3, 1928. Volume 2, 290, 291, 292.

The above petition and order were recorded in the Receivership Order Book, date not appearing. Volume 1, 52.

On May 24, 1928, *the receiver obtained an order* authorizing the payment to Troy Morrison of $45, as bookkeeper. He was employed on two separate occasions.

The above petition and order were filed for record in the Receivership Order Book May 26, 1928. Volume 1, 54.

In the opposition on behalf of the company to the homologation of the receiver's final account, all of the above orders are attacked on the ground that they were obtained and put in force, without there being any notice, constructive or otherwise, to the company or to any of its creditors. These orders are attacked also on other grounds, which we do not consider it necessary to mention.

Opponent, the company, prays in its opposition for service and citation to the receiver, to the surety on his official bond, to A. B. Dennis, to C. L. Adams, and to Troy Morrison; and for judgment *in solido* against these defendants, *"setting aside as null and void each of the above orders,"* and for judgment in favor of opponent, the company, and *in solido* against the receiver, against A. B. Dennis, and against the bond company, rejecting the item of $1,038.50 salary paid to A. B. Dennis, and for judgment *in solido* against these defendants for this sum, with legal interest from judicial demand.

Opponent, the company, also prays for further judgment against the receiver, against Troy Morrison, and against the bond company "for the sum of $95.00, not shown on the account, *unlawfully and illegally paid to the said Troy Morrison."* This $95 was covered *by two separate orders* mentioned hereinabove.

Section 8 of Act No. 159 of 1898, the Receivership Act of this state, provides that: "No order shall be granted by the court until ten days *after entry of such notice* in the order books, except an order to show cause, or when circumstances in the opinion of the court require otherwise, and same is so stated in the order or decree."

It must be conceded, as shown by the record, that none of the orders granted by the court complied with section 8 of Act No. 159 of 1898. They were all granted before the clerk noted on the Receivership Order

Book the filing of the petitions for the orders. Therefore none were granted "ten days after entry of such notice," as required by this section.

Be that as it may, the receiver is not personally liable in this case, and, as these orders are not absolutely null, the opponent, the company, cannot be permitted to attack them as null and void, collaterally by way of opposition to the receiver's final account, but must be relegated to a direct action to have them annulled and vacated.

As said by this court on rehearing in Killeen v. Boland, Gschwind Co., 157 La. 575, 102 So. 672, 675:

"The fact that the application for confirmation of the sale was not preceded by entry for 10 days in the receiver's order book, as required by section 8 of Act 159 of 1898, does not, in our opinion, *render said order an absolute nullity*, as far as the protection of the receivers against personal liability is concerned. The order may be irregular or improvident; yet, at the same time, it is an order of the court, obtained in good faith, *and without fraudulent representation on the part of the receivers*, and there is no charge in this case that the property was delivered by the receivers to the purchasers *through collusion*.

"The receivers under such order *must necessarily be protected against personal liability, notwithstanding the subsequent vacation of same*." (Italics ours.)

The court further said:

"There has been no attempt on the part of the opposing creditors in this case to va-cate this order in any direct proceeding, nor was the auctioneer's sale opposed by them.

"Section 6 of Act 159 of 1898 provides that—

" 'The receiver so appointed shall give such bond for the faithful performance of his duties as the court may fix; and shall hold, administer, manage and dispose of the property and income of such corporation in such manner as the court may decide to be for the interest of all parties.'

"When a receiver acts, therefore, under an order of court, he is necessarily protected by such order *against any personal liability*, in the event that said order *may be vacated* in subsequent proceedings, *unless it is alleged and proven that such order has been obtained upon false representations made by the receiver, or in fraud of the creditors of the corporation*." (Italics ours.)

There are no such allegations in the opposition filed by the company, and its opposition was properly dismissed in the lower court, except that the attorney's fee of the receiver should have been reduced to $625, and the compensation of the receiver to $1,500.

The judgment appealed from is therefore amended so as to reduce the attorney's fee of $1,250, allowed therein to the receiver, to $625, and the compensation of $3,000, allowed therein to the receiver, to $1,500.

It is now ordered that the judgment, as amended, be affirmed, and that the receiver pay all costs.