HAWTHORNE, Justice.
 

 This is an appeal from a judgment of the Civil District Court for the Parish of Orleans, authorizing the receiver of State Realty Company, Inc., to sell certain real estate belonging to the corporation at private sale at a minimum price of $20,000 in cash, which sum represents an offer for the purchase of the property made by one Anthony DiMarco.
 

 To the application of the receiver to sell the property at private sale under the provisions of Act 43 of 1924, John T. Gough, alleging himself to be the owner of one-half of the outstanding stock -of the corporation and vice-president thereof, filed opposition. In this opposition he denied the allegations of the receiver that the real estate was the only asset of the corporation and that the receiver since his appointment up to the present time had endeavored to find a purchaser for the property but was unable to do so. Opponent alleged that he had presented to the receiver on many occasions offers from real estate agents to sell the property, but that the'receiver never interested himself in any of these offers and had not done his duty as receiver. The opponent admitted the payment of city, state, .and corporation franchise taxes for a period of 15 years at $140 per year, but alleged that the corporation had sufficient funds to pay these taxes for 10 additional years, and that the property which the receiver was petitioning the court for authority to sell was not in jeopardy due to the necessity of paying these taxes.
 

 The opponent alleged that the price offered was not a fair one and did not represent the true market value of the real estate which the receiver was seeking au
 
 *1060
 
 thority to sell at private sale; that the receiver .sold an approximate %°th part of this asset for $2,000, and that, if the remaining property had an equivalent value, i.t was worth under present values $160,000, .and that he had appraisals of competent real estate agents showing the property to .have a much greater value than $20,000, •one of said appraisals showing a minimum value of $50,000 and the other of $66,000; that the proposed sale would not be to the .advantage of the stockholders and creditors; further, that there existed a judgment against the corporation which, with interest, amounted to $21,500, and that the proposed sale would not pay the debts- of the corporation, and a deficiency judgment would be rendered against opponent; that the judgment originated as an obligation of the corporation when the corporation borrowed from a bank for the purpose of preparing and offering to the public this property as a subdivision for sale in lots; that the property was surveyed, subdivided,improved, etc., and that the over-all cost, to the corporation on the date the receiver was appointed was $45,000.
 

 The opponent urged that the court could not legally authorize the proposed sale without first appointing an appraiser to make a formal inventory and appraisement of the property to be sold, and that, although the receiver was authorized in his order of appointment to sell such part of the property as was necessary to pay off and liquidate the indebtedness of the corporation, it was never the intention of any of the parties that the receiver should have the right to sell the property in bulk, but that a much better price would be received if the property were sold in lots at public auction; that such a sale would realize a sufficient amount to pay all debts of the corporation, all costs of the receivership, and dividends to the stockholders without loss to any one.
 

 The receiver having instituted these proceedings under the provisions of Act 43 of 1924, the only issues before this court are whether it is advisable and to the advantage of the corporation to sell the property at private sale, and, if so, whether the price, terms, and conditions of the sale as fixed by the lower court are proper, and represent the fair and .true value of the property.
 

 Act 43 of 1924 grants unto a receiver of a corporation, whenever it appears to him that it is to the advantage of the corpora-’ tion that a part or the whole of its assets be sold at private sale, the right to file in the court having jurisdiction a petition setting forth these facts, and thereafter the court shall issue a rule to the proper parties, as provided in Section 2 of the act. Section 3 reads as follows: “Upon trial of the Rule, whether there be opposition or not, the court shall require due proof of all the allegations of the petition, which may be necessary to establish the advisability of a private sale of the properties, and if in the judgment of the Court the property should be sold at private sale, it shall fix
 
 *1062
 
 such minimum prices and terms and conditions for the sale as it shall deem proper and enter such further orders as may appear desirable to it.”
 

 The rule in this case, together with the opposition thereto, was tried in the lower court on July 25, 1944, and the evidence and testimony taken at that time disclose the following facts:
 

 A receiver was appointed for the corporation in 1929, approximately 15 years before the trial of the rule. The only remaining asset or property owned by the corporation at the present time is the real estate which the receiver now seeks authority from the court to sell at private sale. This property is located on the corner of Hayne Boulevard and Downman Road in the Third District of the City of New Orleans, and is described as Groves 6 and 7 in Section 12 of New Orleans/Lake Shore Land Company’s Lands, according to an official map of this tract on file in the office of Watts K. Leverich, notary public, under date of December 11, 1918, less and except part thereof sold to the City of New Orleans, being fully described in the petition of the receiver for authority to sell the property. The land is unimproved and non-revenue-producing suburban property. It is not properly filled for building purposes and would have to be filled an average of four feet to bring it up to grade at a cost in excess of $48,000. At the time the receiver was appointed, the property was burdened with a judicial mortgage in .the sum of $7,000, which with interest, attorney’s fees, and costs now amounts to-over $18,000.
 

 There is some testimony in. the record' that a certain real estate agent at one time' made an offer to attempt the sale of the property -in lots. Yet for a period of two-years prior to the trial of the rule another reputable real estate firm in the City of New Orleans had made a diligent effort to find a purchaser for the property and during this time had inserted in the newspapers some 75 advertisements soliciting a purchaser or offering the property for sale. However, during this period the only formal and bona fide offer ever received by this real estate firm and by the receiver was the offer made by DiMarco of $20,-000 in cash which the receiver now seeks authority to accept.
 

 The receiver of the corporation had on hand at the time of the trial the sum of only $775 in cash to satisfy all obligations of the corporation — taxes amounting to $140 per annum, the judicial mortgage amounting to over $18,000, and all costs- of the receivership.
 

 To establish the value of the property, the receiver called as witnesses real estate agents and appraisers. One of these was a realtor, a member of the American Institute of Real Estate Appraisers, ^and first president of the Louisiana Real Estate Appraisal Society, who had appraised property for the Housing Authority of New Orleans, the Home Owners’ Loan Corpora
 
 *1064
 
 tion, and some 12 building and loan associations' in 'New Orleans and elsewhere in the State of Louisiana, and the other two had had 25 and 30 years’ experience, respectively,
 
 in
 
 the real estate business. All of these witnesses were thproughly familiar with the property, and two had sold property in the immediate vicinity.
 

 A consideration of the entire testimony of all these witnesses shows conclusively that the offer of DiMarco to purchase the property for $20,000 in cash was fair and represented its true value. One expert even testified that it was a liberal offer. All testified that it was not advisable to sell the property in lots at public auction because of the insufficient competition among prospective purchasers and because of the expense incidental thereto, such as the commission of a real estate developer upon the sale of each lot and legal costs incurred in making such sales, including revenue stamps, mortgage certificates, etc.
 

 The opponent called a prominent real estate agent of the city, who testified that he valued the property on April 3, 1941, at $50,000. However, a reading of his testimony clearly discloses that he definitely and admittedly based his valuation on future developments in the area in which this property is situated. In other words, his valuation was of a speculative nature and entirely prospective. He very frankly admitted that these were elements in his valuation, for, in reply to a question of whether an element in his valuation was the future development of this section, he-replied, “Definitely”. In answer to the question as to whether he would advise the court to sell the property for $20,000, he stated that it was very hard to advise others, but that, due to the large sums of money spent along the lakefront and other improvements in the vicinity, property in this general section should improve, and, the minute the war was ended, building could be commenced in that section. He further stated that property of. the type here involved was presently of no use, and it would be advisable to hold it until it could be utilized by a prospective purchaser. When asked whether he believed he could get $50,000 for the property, he replied, “No; I don’t”.
 

 Although opponent now contends that the sum of $20,000 is not a fair price for the property and does not represent its true value, the record discloses that on May 14, 1941, the receiver under an order of court granted to the opponent, John T. Gough, an option to purchase the property for the sum of $18,000 in cash, which option he never exercised. Surely the opponent will not contend that this offer did not represent the true value of the property at that time — an offer made by him to a corporation of which he was vice-president, a director, and a stockholder owning 50 per cent of the stock.
 

 Opponent contends that the lower court could not legally authorize the proposed sale without first appointing an appraiser
 
 *1066
 
 to make a formal inventory and appraisement of the property to be sold.
 

 The entire proceedings of the receivership are not in the record, as the parties hereto by stipulation designated certain documents which were to constitute the record as filed in this court, and this record as so made up does not disclose the taking of an inventory and the making of an appraisement of the property involved. However, the receiver admitted under cross-examination that no such inventory or appraisement was ever made, stating that it would have been an unnecessary expense since this piece of property was the only asset of the corporation.
 

 Under the law and jurisprudence of this state, it is well settled that “The taking of an inventory and the making of an appraisement of property and the filing of a statement of the liabilities are deemed proper acts of administration on part of a Receiver, and the same should ordinarily be done within a reasonable time after he takes charge”. In re Receivership of The New Iberia Cotton Mill Co., Ltd., 109 La. 875, 33 So. 903, 905. See also Allen v. Llano Del Rio Co. of Nevada, 175 La. 1081, 145 So. 113.
 

 It is equally well settled that “ * * * the property of an insolvent corporation, at a receiver’s sale, made to pay debts and close the affairs of the corporation, must be offered subject to the benefit of appraisement, and must bring, at the first offering, not less than two-thirds of its appraised value to make the sale thereof valid, and to authorize the delivery of the property to. the purchasers”. Killeen et al. v. Boland, Gschwind Co., Ltd., 157 La. 566, 102 So. 672, 674.
 

 It is to be noted, however, that the case of Killeen v. Boland, Gschwind Co., Ltd., supra, lays down the rule with reference to receivership sales at public auction made under the provisions of Act 159 of 1898 and has no application to private sales made under the provisions of Act 43 of 1924.
 

 This being so, the question now presented is whether the order of the lower court authorizing the sale of the property here involved at private sale for the cash price hereinabove named was legal and valid in the absence of an inventory and appraisement.
 

 Insofar as this particular sale is concerned and under the facts in this case, an inventory and appraisement would serve no useful purpose, as by the very terms and provisions of Act 43 of 1924 the court, after a hearing of the rule as provided for therein, decides the advisability of a private sale and fixes
 
 "such mininutm prices and terms and conditions for the sale as it shall deem proper*’.
 
 (Italics ours.) Further, there is no doubt that the receiver, when proceeding under the authority conferred by this act, has to establish that a private sale is to the advantage of the corporation and that the price of the proposed sale represents a fair and true value of the
 
 *1068
 
 property to be sold; while, on the other hand, property to be sold at public auction under Act 159 of 1898 must bring at first offering not less than two-thirds of its appraised vajue (Killeen v. Boland, Gschwind Co., Ltd., supra), and to determine this appraised value it is necessary that an inventory and appraisement be made of the property to be sold before the sale is- ordered.
 

 It is not our intention to hold, nor do we hold, that a receiver of a corporation is under no duty, and is not required, to cause to be made an inventory and appraisement of the property coming into his hands as such receiver and a statement of all liabilities to be filed. The law is perfectly clear that, if the receiver fails to cause these things to be done within a reasonable time after his appointment, any party at interest, by a proper proceeding and upon a proper showing, may secure an order from the court requiring the receiver to cause an inventory to be made and a statement of liabilities filed. In re Receivership of The New Iberia Cotton Mill Co., Ltd., 109 La. 875, 33 So. 903.
 

 In this case, the lower court, after hearing all the testimony and reviewing the evidence, concluded that the receiver had established that it was to the advantage of the corporation for the property to be sold at private sale, and that the price offered by the prospective purchaser was fair and represented the true value, and in this conclusion we concur.
 

 For the reasons assigned, the judgment appealed from is affirmed; all costs in the lower court to be paid by the receivership, costs of this appeal to be paid by the appellant.
 

 PONDER, J., absent.