HAMITER, Justice.
In this receivership proceeding George W. Stoessel, Sr., an intervenor, is appealing from a judgment which rejected his demand for judicial confirmation of an alleged sale .of certain securities by the Receivers to him.
For many years the Canal Bank & Trust Company, in Liquidation, held among its assets the securities in question,' they being described as:
Subdrainage District #3 of Fourth Jefferson Drainage District, Jefferson Parish, State of Louisiana, 2% Refunding Bonds, dated Decern- • ber 15th, 1935 $ 48,900.00
Subdrainage District #3 of Fourth Jefferson Drainage District, J efferson Parish, State of Louisiana, Non-Interest Bearing Refunding Bonds, dated December 15th, 1935, Maturing December 15th, 1975 $168,000.00
On December 16, 1949, in view of an election scheduled for January 24, 1950, to determine whether the securities would be refinanced, and because they did not wish to speculate on the election’s outcome, the Receivers filed a petition in the district court alleging their desire to sell ultimately the described bonds at private sale under the provisions of Act No. 43 of 1924, LSA-Revised Statutes of 1950, Title 12, Sections 771 through 774. They prayed "that they be authorized, empowered and directed to advertise for the submission of sealed bids to purchase the above-listed securities, in separate lots as segregated above, the sealed.bids to be submitted to the Receivers within a delay to be fixed by them, the right being reserved to the Receivers to reject any and all bids; that thereafter the Receivers be authorized, empowered and directed to proceed, under Act No. 43 of 1924, to sell said securities at private sale.”
On this showing the court, on the date of such filing, ordered “that this application be spread upon the Receivers’ order book for the period required by law, and, in event there be no opposition thereto, petitioners be and they are hereby authorized, empowered and directed to obtain sealed bids for the sale of the securities itemized in the foregoing petition, in separate lots as segregated therein, invitation for such bids to be advertised and the bids to be submitted within a delay to be fixed by petitioners, the right being reserved to the Receivers to reject any and all bids; that, thereafter, petitioners are hereby author *970 ized, empowered and directed to proceed to sell said securities, in separate lots, under the provisions of Act No. 43 of 1924.”
No opposition to the application having been made, and pursuant to the order, the Receivers advertised for sealed bids which were to be opened on January 12, 1950, at 11:00 o’clock A.M.
At the hour mentioned only one bid had been received, and it was 'from the Intervenor, George W. Stoessel, Sr. His letter, in which he gave his address as care of Bert W. Clarke, attorney at law, recited that he proposed to purchase the securities for the total sum of $159,780, plus the interest to accrue on the interest bearing bonds until date of delivery to him.
On the following day (January 13, 1950) the Receivers presented to the court a petition requesting authority to make the sale. In it they described the Stoessel bid, and they further alleged that “it appears to the manifest advantage and interest' of this Receivership to sell said bonds at private sale, in accordance with Act No. 43 of 1924, at the price hereinabove set forth to the said George W. Stoessel, Sr., conditioned upon said George W. Stoessel, Sr., delivering to petitioners, immediately upon signing of judgment confirming the sale, cash or certified check for fall amount of his bid. (Underscoring ours)
Acting upon this petition the court ordered that notice thereof be given by publication to the creditors of the Canal Bank & Trust Company, in Liquidation. Additionally, it directed the issuance of a rule ordering the named corporation to show cause on Tuesday, January 24, 1950, at 11:00 o’clock A.M., why the Receivers’ request for authority to sell the bonds on the terms and conditions set out in their petition should not be granted.
The necessary notice by publication having been given to creditors and service of process made on the corporation, the rule came on for trial on the designated date (also the date of the bond ¡election), and at that time the intervention presently under consideration was filed. In his petition, Mr. Stoessel alleged the submission of a bid for the bonds of $159,780, plus accrued interest, and that his offer had been accepted. Further, he alleged, among other things, as follows:
“Petitioner further shows that from the moment he was notified by the receivers that his bid had been accepted, that petitioner under the provisions of law and particularly under the provisions of the Revised Civil Code was legally bound to accept delivery of said securities and to pay the purchase price thereof; that the Receivers were legally bound to proceed to sell the securities under the provisions of Act No. 43 of 1924; that said bid and acceptance constitutes a good, valid, legal and binding contract of sale between the parties.
“Petitioner further shows. that he is ready, willing and able to comply with the terms and conditions • of his bid and to *972 $ay the purchase price of said securities ■upon delivery of said securities to him, at the proper time, that is, when the judgment authorizing the sale to petitioner becomes final and executory.
“Petitioner further shows that although there exists, between himself and the receivers, a good, valid, • legal and binding contract of sale, that the receivers have, in their petition filed on January 13, 1950, attempted to impose a new condition, not contemplated nor agreed to in said contract of sale and that said condition is as follows: ‘Conditioned upon Stoessel delivering to petitioners immediately upon signing of the judgment confirming the sale, cash or certified check in the full amount of his bid,’ that said condition is arbitrary and unauthorized; that petitioner is obligated to pay for said securities on delivery; that delivery cannot be made until the judgment confirming the sale becomes final and executory; and that the receivers are prohibited from imposing a condition altering or amending the valid contract existing between petitioner and the receivers; that said condition, if allowed, is in violation of the law with respect to the finality of judgments.” (In their brief Intervenor’s counsel show that a judgment cannot become final and executory until some thirteen days after its rendition.)
The prayer of Intervenor was “that there be judgment herein authorizing the receivers to sell the bonds described in their petition filed on January 13, 1950, at private sale, to your petitioner herein, for the price stated in said petition, upon said judgment authorizing said sale becoming final; the purchaser (petitioner) to pay the purchase price in cash or certified check, at the time of delivery of said bonds.
“In the alternative petitioner prays that the receivers be authorized to sell the bonds described in their petition filed January 13, 1950, at private sale to your petitioner herein for the price stated in said petition on the following terms and conditions:
“Immediately upon rendition of judgment confirming the sale, the purchaser (petitioner) to deposit with receivers, certified check in the sum of $10,000.00 as evidence of his good faith in complying with the terms and conditions of his bid, which is to apply as part payment on the bonds when their legality has been approved by his attorneys, or to be forfeited as liquidated damages should he fail or refuse to accept delivery of the bonds in accordance with his contract.
“The balance of the purchase price to be paid in cash or certified check upon delivery of said bonds, after judgment confirming sale becomes final.”
On the issues created by the allegations of the Receivers and those of the Intervenor the rule was tried as scheduled, resulting in a judgment decreeing that the bonds be not sold in accordance with the Receivers’ petition and that they remain as the assets of the Receivership, subject *974 to the court’s further orders. The reasons for the decision were dictated by the judge, at the conclusion of the hearing, and were incorporated in the record. They are as follows:
“In accordance with the suggestion of counsel for the Intervenor, all counsel, together with the Receivers, repaired to chambers and discussed the matter further. [At a recess ordered for that purpose.] Several suggestions were made by counsel for Intervenor 'for the purpose of obviating the necessity of paying either in cash or by certified check the amount of the bid as recommended by the Receiver and in accordance with the evidence and the testimony of Mr. Finlce. It was finally agreed, at the request of counsel for Intervenor, that the Court would defer action on the matter until 3:00 p. m. today in order to give him an opportunity to discuss the matter further with his clients. (Brackets ours)
“The Court received a telephone message from Mr. Bert Clarke, one of the attorneys for the Intervenor, at 2:45 to the effect that his client would not pay, either in cash or by certified check, by 3:00 o’clock the amount of the bid, and he therefore suggested to the Court that judgment be rendered in whatever manner the Court saw fit.
“The Court agreed to defer action on the matter until 3:00 o’clock in the hope and for the purpose of endeavering to consummate the sale of the Jefferson drainage bonds in accordance with the recommenda-tions of the Receivers. The Court is inf thorough accord with the recommendations of the Receivers, has 'familiarized itself with the particular transaction, and can add very little to what Mr. Finke has already said on the witness stand. I feel that if the sale could have been consummated today before the results of the election that it would have been a good deal, sale, or transaction for the Receivers, but I could not permit the sale of these securities to Mr. Stoessel, or any other person, without payment being made today, or without either the cash or a certified check being deposited in the Registry of the Court, until the judgment became executory, because I could not subject the Receivers and the stockholders of this receivership to the possibility of a sale being made and then, for some reason, the purchaser would refuse to comply with the sale and possibly be unable to pay the amount of his bid eventually, assuming that the election failed. Of course, I know that if the election passed, then the purchaser would be very delighted to pay the amount of his bid, because his bonds in my opinion would be worth 100 cents on the dollar.
“Under the circumstances, and for the reasons I have just dictated, the intervention is dismissed, because the bidder, Mr. Stoessel, has not only failed, but has advised the court he will not comply with the conditions of the petition filed by the Receivers.”
*976 On his appeal to this court Intervcnor makes two contentions, they being (1) that when the bids were opened on January 12, 1950, there was an unconditional acceptance by the Receivers of his offer and such acceptance constituted. a completed contract of sale as between the parties which then vested title in him without the necessity of any further court proceedings; and (2) that subsequently the Receivers imposed an arbitrary, unauthorized and unreasonable condition, regarding the carrying out of the contract, a compliance with which the court erroneously required before confirming the sale.
In considering these contentions, both of which may be disposed of together, it is first to be noticed that for the purpose of selling the securities the Receivers invoked the provisions of Act No. 43 of 1924, a statute which authorizes a private sale of receivership property and describes the procedure to be followed in making it; they did not wish or attempt to offer such assets at public auction, with the benefit of appraisement, pursuant to the provisions of Act No. 159 of 1898, LSA— RS 12:752 et seq. Accordingly, they presented a petition to the court, as Section 1 of the 1924 statute prescribes, recommending that sealed bids should be invited and that the right be reserved to them to reject any and all offers. The recommendation was approved, and in keeping with it the Receivers proceeded to act.
Late in the afternoon of the day on which Intervenor’s lone bid was received and opened (January 12, 1950), the Receivers, according to their testimony contained in the record (one testified and it was agreed that the other’s testimony would be substantially the same), contacted by telephone and talked with Mr. Bert W. Clarke, Intervenor’s representative and attorney. During the conversation they (using a telephone with an extension) informed Mr. Clarke that the price offered by Mr. Stoessel was satisfactory but that they would require, in view of the fact that they had been unable to obtain any information as to the bidder’s financial standing, the presentation to them not later than 11:00 o’clock A.M., on January 24, 1950, of a certified check covering the bid. (The suggested date was the day of the bond election; also it was the earliest day Stoessel’s proposal could be judicially approved because of the delays prescribed by the 1924 statute.) Regarding such requirement the Receivers testified: “The purpose in speaking to Mr. Clarke and telling him that the transaction must be completed not later than 11:00 A.M. on January 24, 1950, by delivery of the certified check against delivery of the bonds was because there were notices published of the election, and I stated to Mr. Clarke, ‘We don’t want to ride you over the election, but we don’t want you to ride us over the election, therefore the matter must be completed not later than 11:00 A.M., January 24, 1950.’”
*978 Mr. Clarke, as shown by the further testimony of the Receivers, replied that the condition demanded was satisfactory and that he would arrange accordingly.
Intervenor, on the trial of the rule, offered no evidence whatever; and the above discussed statements of the Receivers stand uncontradicted. From which it follows that the acceptance of the bid was not unconditional, as Intervenor contends.
But assuming for the sake of argument that the bid had been unqualifiedly accepted, and that the Receivers’ imposed an unauthorized condition in making their subsequent recommendation to the court, such an acceptance did not and could not constitute a completed contract of sale, vesting title in Intervenor, without the necessity of further court proceedings.
Section 3 of Act No. 43 of 1924 provides: “Upon trial of -the Rule, whether there bfe opposition or not, the court shall require due proof of all the allegations of the petition, which may be necessary to establish the advisability of a private sale of the properties, and if in the judgment of the Court the property should be sold at private sale, it shall fix such minimum prices and terms and conditions for the sale as it shall deem proper and enter such further orders as may appear desirable to it.”
Under the express language of the statute it is certain that the Receivers are without authority to bind the Receivership to a contract of sale of which the terms, conditions and minimum price have not been approved by the court, even though the proposal be unopposed by other interested parties. In the absence of the prescribed judicial sanction, in other words, no proposed sale can be complete or enforceable.
That this is the correct interpretation of the statutory provisions is indicated by our holding in Gough v. State Realty Company, Inc., 210 La. 10S5, 29 So.2d 60. Therein we observed that for a valid sale at public auction of receivership property under the provisions of Act No. 159 of 1898 such property must be offered subject to the benefit of appraisement and it must bring, at the first offering, not less than two-thirds of its appraised value; whereas at a private sale under the provisions of Act No. 43 of 1924 an inventory and appraisement would serve no useful purpose, because the court, after a hearing of the rule to show cause at which the receiver submits evidence in support of his recommendations, decides the advisability of a private sale and fixes such minimum prices and terms and conditions for the sale as it deems proper. All of which clearly implies, if it does not expressly state, that such respective receivership sales are valid only when there has been a complete compliance with the applicable statutory provisions.
Appropriate also is Morelock v. Morgan & Bird Gravel Company, Inc., 174 La. 658, 141 So. 368. Therein this court held *980 specifically that a contract for the private sale of receivership property which had been entered into without judicial sanction was null and void.
In the instant case no judicial approval has ever been given to Intervenor’s proposal to purchase the securities, particularly as to the price, terms and conditions thereof. The court’s first order, that rendered on December 16, 1949, and on which Intervenor principally relies, merely authorized the Receivers to invite a proposition for the disposal of the bonds which might be acceptable subsequently to all concerned. This being true, even if it be assumed that the Receivers accepted the offer unconditionally, there exists no valid contract of sale under which the parties .are bound.
For the reasons assigned the judgment appealed from is affirmed.