**Vincent OLIVA, Plaintiff,**

v.

**Kirby HELLER, Defendant.**

**No. 86 Civ. 8082 (MJL).**

United States District Court, S.D. New York.

Aug. 18, 1987.

---

Vincent Oliva, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Ellen B. Silverman, New York City, for defendant.

LOWE, District Judge.

The question in this case is whether a judicial law clerk, who performs tasks within the scope of her employment, is protected by the same absolute immunity that has long enabled judges to make principled and independent decisions without fear of consequences.

### FACTS

In 1982, plaintiff Vincent Oliva ("Oliva") was convicted after a jury trial for conspiring to rob a bank and entering a bank with intent to commit larceny. Following his conviction, Judge Eugene H. Nickerson of the United States District Court for the Eastern District of New York sentenced Oliva to two concurrent prison terms of five and ten years. Oliva appealed and the Second Circuit affirmed the conviction.

Subsequently, Oliva filed a series of petitions seeking to have the judgment of conviction and the sentence vacated. The first such application was made to Judge Nickerson under 28 U.S.C. § 2255. On June 29, 1984, Judge Nickerson dismissed Oliva's petition. The Second Circuit affirmed the dismissal.

In May 1986, plaintiff filed a petition for habeas relief under 28 U.S.C. § 2241 in this district. The case was assigned to Judge Charles S. Haight, who found that the petition was, in essence, a motion to vacate sentence, more properly brought under 28 U.S.C. § 2255. Accordingly, the case was transferred to the Eastern District of New York. *Oliva v. James*, No. 86 Civ. 3976 (CSH), slip op. (S.D.N.Y. July 7, 1986) [Available on WESTLAW, DCT database].

Following the transfer of the case to the Eastern District, it was assigned to Judge Nickerson. Judge Nickerson assigned plaintiff's motion to defendant Kirby Ann Heller ("Heller"), one of his two law clerks.[1] Heller worked on the motion, which was denied on July 18, 1986. The motion had been opposed by the Eastern District United States Attorney's Office on behalf of the respondent.[2]

Prior to assisting Judge Nickerson on Oliva's case, Heller had accepted a position with the United States Attorney's Office for the Eastern District to begin upon the completion of her judicial clerkship. Immediately upon accepting that position, Heller informed Judge Nickerson of her decision. (Affidavit of Kirby Ann Heller dated January 20, 1987 ("Heller Aff."), ¶ 2). As a result, in cases where the United States Attorney's Office appeared, the parties were asked to consent to Heller's involvement. (Heller Aff., ¶ 2). In Oliva's case, Heller inadvertently worked on the case without first asking Oliva's consent. (Heller Aff., ¶ 3).

After discovering that Heller had accepted a position with the Eastern District's United States Attorney's Office, Oliva requested reconsideration of his motion and Judge Nickerson's recusal from the case.

On August 26, 1986 Judge Nickerson recused himself from Oliva's case. He stated: "[a]lthough the court finds no actual prejudice it wishes to avoid even the slightest appearance of impropriety...." *Oliva v. United States*, No. 86 Civ. 2354 (EHN), slip op. (E.D.N.Y. August 26, 1987). The case was then reassigned to Judge Thomas C. Platt, also in the Eastern District.

Before Judge Platt could rule on the § 2255 motion, Oliva moved for reargu-

---

**1.** Heller was assigned the case pursuant to the system established by Judge Nickerson. Cases with odd docket numbers were assigned to Heller and those with even docket numbers were assigned to the other law clerk. (Affidavit of Kirby Ann Heller dated February 19, 1987 ("Heller Supp. Aff."), ¶ 2). Oliva's criminal docket number was odd, while his civil docket number was even. Because law clerk assign-

ment was based on the criminal docket number (the original litigation out of which the civil action arose), Oliva's motion was assigned to Heller. (Heller Supp. Aff., ¶ 2).

**2.** The United States Attorney's Office did not, however, actually submit any papers in opposition to plaintiff's § 2255 motion.

ment on his original petition which had been decided by Judge Haight in the Southern District. Oliva alleged that because Heller had accepted employment with the United States Attorney's Office, the entire Eastern District bench was disqualified from hearing his case. On November 14, 1986, Judge Haight dismissed Oliva's petition and stated: "[t]he reassignment dispels any arguable impropriety; if Judge Nickerson erred in ruling initially on Oliva's application, the error has been cured." *Oliva v. James,* No. 86 Civ. 3976 (CSH) (E.D.N.Y. November 14, 1986) [Available on WESTLAW, DCT database].

On November 10, 1986, just before Judge Haight rendered his decision, Judge Platt denied Oliva's reassigned motion on the merits. Judge Platt found that any "taint" which may have resulted from Heller's work for Judge Nickerson "may well have been cured by the Second Circuit's independent review and affirmance of that decision." *Oliva v. United States,* No. 86 Civ. 2354 (TCP), slip op. at 3 (E.D.N.Y. November 10, 1986).

Still dissatisfied with the judicial treatment of his case, Oliva moved for reconsideration of Judge Platt's decision. Judge Platt granted the motion for reconsideration and again denied Oliva's application on the merits. *Oliva v. United States,* No. 86 Civ. 2354 (TCP), slip op. (E.D.N.Y. December 17, 1986).

Oliva now brings this action against Heller, alleging violations of his First and Fifth Amendment rights under the United States Constitution. He seeks $175,000 in compensatory damages, $5,000,000 in punitive damages, and injunctive and declaratory relief such that all of his post-conviction motions be reconsidered in a manner con-

sistent with the Due Process and Equal Protection Clauses of the Fifth Amendment.

Heller moves under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint on the ground that a judge's law clerk enjoys absolute judicial immunity. Alternatively, she seeks summary judgment.

In response, Oliva has opposed defendant's motion and crossmoved for discovery. Oliva also asks this court to obtain *pro bono* counsel to represent him in order to conduct the requested discovery.[3]

## DISCUSSION

The parties have not cited, and our research has not revealed, any Second Circuit case determining whether judicial law clerks are absolutely immune from liability for acts within the scope of their employment. Nor does the issue appear to have been decided by any other federal appellate court.[4]

It is clear, however, that the protection afforded by absolute immunity is governed by a functional analysis. *See Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 500–01, 88 L.Ed.2d 507 (1985); *see also Butz v. Economou,* 438 U.S. 478, 508–17, 98 S.Ct. 2894, 2911–16, 57 L.Ed.2d 895 (1978). The functions performed by judges have long been encompassed by absolute immunity.[5] As early as 1872, the Supreme Court established that judges are absolutely immune from monetary liability "for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher,* 13 Wall. 335, 351, 20 L.Ed. 646 (1872). As the Court later stated:

3. Plaintiff has also moved by letter to prohibit the Justice Department from representing defendant Heller. The motion is frivolous and is denied.

4. At least one United States Court of Appeals has indicated its belief that law clerks enjoy the "same immunity as the judge." *Gray v. Bell,* 712 F.2d 490, 497 n. 15 (D.C.Cir.1983) (*citing* Casto, Innovations in the Defense of Official Immunity Under Section 1983, 47 Tenn.L.Rev. 47, 84 n. 182 (1979)).

5. Absolute immunity has not been limited to those performing judicial functions. The President, legislators and prosecutors are also accorded absolute immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (the President); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (legislators); *Imbler v Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors).

... judicial immunity is thought to be in the best interests of 'the proper administration of justice ... [,for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself.'

*Stump v. Sparkman*, 435 U.S. 349, 363, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978) (quoting *Bradley*, 13 Wall. at 347).

Absolute judicial immunity has not been limited to judges. In general, court clerks are accorded absolute immunity where their acts are of a judicial nature. They receive qualified immunity when they perform ministerial functions.

Federal appellate courts have granted absolute immunity to court clerks whose duties include certain discretionary functions similar to those performed by judges. *See Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir.1983) (court clerks are entitled to absolute immunity when they exercise discretion); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981) (court clerks are entitled to absolute immunity when they act pursuant to a court order or at a judge's discretion); *Slotnick v. Stavinskey*, 560 F.2d 31 (1st Cir.1977) (state court judges and their clerks are absolutely immune from damage suits under 42 U.S.C. § 1983)[6]; *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir.1973) (court clerks enjoy absolute immunity for acts done in performance of their discretionary or quasi-judicial duties).

Several district courts within the Second Circuit have also recognized that absolute immunity protects court clerks performing judicial functions. *Kane v. Yung Won Han*, 550 F.Supp. 120, 123 (E.D.N.Y. 1982) (immunity should be absolute where the clerk's act was of a judicial nature); *Gu-tierrez v. Vergari*, 499 F.Supp. 1040, 1047 n. 5 (S.D.N.Y. 1980) (where clerks perform discretionary or quasi-judicial duties, they have absolute immunity); *Glucksman v. Birns*, 398 F.Supp. 1343, 1353 (S.D.N.Y. 1975) (court clerk entitled to judicial immunity for acts committed in official capacity).[7]

While only some of the tasks performed by court clerks are judicial in nature, the work of judges' law clerks is entirely so. Law clerks are closely connected with the court's decision-making process. Law clerks are "sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be." *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir.1983). Moreover, the work done by law clerks is supervised, approved, and adopted by the judges who initially authorize it. A judicial opinion is not that of the law clerk, but of the judge. Law clerks are simply extensions of the judges at whose pleasure they serve. We conclude, therefore, that for purposes of absolute judicial immunity, judges and their law clerks are as one.

In the instant case, there is no question that had plaintiff chosen to sue Judge Nickerson rather than his law clerk, the judge would be entitled to absolute immunity and the action dismissed. There is also no doubt that defendant Heller was acting within the scope of her employment and pursuant to the judge's instructions in working on plaintiff's case. Accordingly, Heller is absolutely immune from suit.

In view of the above discussion, plaintiff's request that *pro bono* counsel be

**6.** We assume the the clerk discussed in *Slotnick* was a court clerk, and not a law clerk, since the court relied on two cases discussing court or calendar clerks. *Slotnick*, 560 F.2d at 32.

**7.** At least one district court in the Second Circuit has held that court clerks are entitled to absolute immunity even when they perform ministerial functions. *Green v. Bartholomew*, No. 78 Civ. 3994 (RWS) slip op. (S.D.N.Y. January 12, 1979) [Available on WESTLAW, 1979 WL 2034] [available on LEXIS]. In *Green*, the court stated that since no court can "discharge its judicial duties without the aid of clerks, servants and agents" they must be accorded absolute immunity so that "[j]udicial immunity cannot be circumvented by the procedural device of suing the agents by which the court acts." *Id.; see also Blouin v. Dembitz*, 367 F.Supp. 415, 422 (S.D.N.Y.1973).

obtained to assist him in obtaining discovery is denied.

## CONCLUSION

As Judge Nickerson's law clerk acting within the scope of her duties, defendant Heller is covered by absolute judicial immunity. Plaintiff's case is dismissed.

It Is So Ordered.