**Vincent OLIVA, Plaintiff–Appellant,**

v.

**Kirby HELLER, Defendant–Appellee.**

**No. 724, Docket 87–2399.**

United States Court of Appeals, Second Circuit.

Argued Feb. 3, 1988.

Decided Feb. 5, 1988.

Vincent Oliva, plaintiff-appellant pro se.

Ellen B. Silverman, Asst. U.S. Atty. for S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Fredrick M. Lawrence, Asst. U.S. Atty., of counsel), for defendant-appellee.

Before LUMBARD, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

This appeal raises the question of whether the absolute immunity enjoyed by judges in the exercise of their judicial authority extends to the actions of law clerks who assist judges in carrying out judicial functions. We hold that it does, and so affirm the district court.

## FACTS

In 1982, plaintiff Vincent Oliva was convicted in the Eastern District of New York of conspiring to rob a bank and entering a bank with intent to commit larceny after a jury trial held before Judge Nickerson. Judge Nickerson sentenced Oliva to two concurrent terms of five and ten years. Oliva's conviction was affirmed on appeal.

Subsequently, Oliva filed a motion with Judge Nickerson to set aside and vacate the judgment of conviction pursuant to 28 U.S.C. § 2255. Judge Nickerson denied the motion on June 29, 1984, and we affirmed in an unpublished opinion on April 9, 1985. On May 19, 1986, Oliva filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (1982) in the Southern District of New York. The case was assigned to Judge Haight, who found that, in essence, Oliva's Section 2241 petition was properly a motion to vacate sentence pursuant to Section 2255 and therefore could be brought only in the sentencing court. Accordingly, Judge Haight transferred the case to the Eastern District where it was assigned to Judge Nickerson. Judge Nickerson uses an "even-odd" system for assigning work to his two law clerks, in which one clerk is assigned cases with even docket numbers and the other clerk is assigned cases with odd docket numbers. Because Oliva's original criminal case had an odd number, his Section 2255 action was assigned in July 1986 to Judge Nickerson's "odd" law clerk, Kirby Ann Heller. Several months earlier, however, Heller had accepted a position with the United States Attorney's office for the Eastern District of New York, to begin upon the completion of her clerkship. After accepting the offer of employment with the United States Attorney, she worked on cases in which the United States Attorney appeared only with the consent of all parties. Whenever consent was withheld, the case would be assigned to her co-clerk. In Oliva's case, the United States Attorney opposed the Section 2255 motion; however, through an oversight, Oliva's consent to Heller's working on his case was neither sought nor obtained. On July 18, 1986 Judge Nickerson denied Oliva's motion.

After learning of Heller's pending employment with the United States Attorney, Oliva sought reconsideration of his motion and Judge Nickerson's recusal from the case. On August 26, 1986, Judge Nickerson recused himself, not because he believed there was any prejudice to Oliva, but because he wished to avoid "even the slightest appearance of impropriety." The case was then reassigned to Judge Platt

who interpreted Oliva's motion as an attack on Judge Nickerson's 1984 denial of Oliva's original Section 2255 motion, rejected that attack and dismissed all of Oliva's other claims on the merits. Oliva then filed a motion to reconsider, arguing that he was seeking to vacate Judge Nickerson's July 18, 1986 order, not the June 29, 1984 order. Judge Platt granted the motion to reconsider and then, assuming Oliva's interpretation to be correct, once again denied all of Oliva's claims on the merits.

On September 10, 1986, Oliva filed the present *Bivens* action, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against Heller, claiming she had violated his rights under first and fifth amendments of the Constitution. He sought, *inter alia*, $175,000 in compensatory damages, $5,000,000 in punitive damages, and injunctive and declaratory relief in the form of "judicial notice that all of [his] motions should be reconsidered in a manner consistent with Due Process and Equal Protection of the Laws." In the district court he also sought appointment of counsel to help him pursue requested discovery and by letter moved to prevent the Justice Department from representing defendant Heller. Heller moved to dismiss Oliva's complaint under Fed.R.Civ.P. 12(b)(6) on the grounds that as a judge's law clerk assisting the judge in the performance of his duties she was entitled to absolute immunity. In the alternative, she moved for summary judgment. The district court granted Heller's motion and dismissed the case. *Oliva v. Heller*, 670 F.Supp. 523 (S.D.N.Y.1987).

## DISCUSSION

Judges are granted absolute immunity from liability for acts taken pursuant to their judicial power and authority:

> "not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.

*Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967) (citations omitted); *cf. Forrester v. White*, — U.S. —, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (nonjudicial acts of judge are not subject to absolute immunity). The concern for the integrity of the judicial process underlying the absolute immunity of judges also is reflected in the extension of absolute immunity to "certain others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). Included among these others are prosecutors, administrative law judges and hearing examiners, grand jurors and witnesses in judicial proceedings. *Id.; see Butz v. Economou*, 438 U.S. 478, 511–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976).

In determining which persons are covered by an extension of the immunity, the Supreme Court follows a " 'functional' approach," under which "[a]bsolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. at 201, 106 S.Ct. at 501 (citations omitted); *cf. Butz v. Economou*, 438 U.S. at 513, 98 S.Ct. at 2914 (role of hearing examiner or administrative law judge "functionally comparable" to that of judge).

Applying this analysis, courts have granted absolute immunity to court clerks where they were performing discretionary acts of a judicial nature. *See, e.g., Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir.1983), *cert. denied*, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981); *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir.1973).

In contrast to court clerks, who frequently perform ministerial functions, a law clerk generally performs discretionary acts of a judicial nature. Indeed, a law clerk is probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function. As described by the district court:

> the work of judges' law clerks is entirely [judicial in nature]. Law clerks are closely connected with the court's decision-making process. Law clerks are "sounding boards for tentative opinions and legal researchers who seek the authorities that affect decisions. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be." *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir. 1983). Moreover, the work done by law clerks is supervised, approved, and adopted by the judges who initially authorized it. A judicial opinion is not that of the law clerk, but of the judge. Law clerks are simply extensions of the judges at whose pleasure they serve.

*Oliva v. Heller*, 670 F.Supp. at 526. We believe the district court accurately described the role of the law clerk in the judicial process, and we therefore must agree that "for purposes of absolute judicial immunity, judges and their law clerks are as one." *Id.* Accordingly, we hold that the defendant, who was clearly assisting the judge in carrying out judicial functions, was covered by the doctrine of absolute immunity.

Having disposed of the only legal issue raised by this case, we note that Oliva's argument that the district court abused its discretion in refusing to appoint counsel for him is without merit. Other than raising the legal question of whether law clerks are entitled to absolute immunity, his suit was palpably frivolous, lacking even the slightest chance of success on the merits. *See* 28 U.S.C. § 1915(d) (1982); *Hodge v. Police Officers*, 802 F.2d 58, 60–61 (2d Cir.1986). Suffice to add, there is nothing in the record to suggest that anything done by Judge Nickerson, or by his law clerk Kirby Ann Heller, or any failure on their part, in any way prejudiced the consideration of Oliva's petition.

Affirmed.