# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #027

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of June, 2019**, are as follows:

**PER CURIAM**:

**2018-C-1105 C/W 2018-C-1115**   **STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC. v. ALLYSON CAMPBELL, ET AL. (Parish of Ouachita)**

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it dismisses plaintiff's claims against the defendant judges with prejudice. The exception of no cause of action filed by these defendants is hereby denied. In all other respects, the judgment of the court of appeal is affirmed. The case is remanded to the district court for further proceedings.

REVERSED IN PART AND REMANDED.

Retired Judge Michael Kirby appointed Justice ad hoc, sitting for Justice Clark, recused.

JOHNSON, C.J., concurs in part and dissents in part and assigns reasons.
WEIMER, J., concurs and assigns reasons.
GUIDRY, J., dissents and assigns reasons.
CRICHTON, J., dissents and assigns reasons.
KIRBY, J., concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2018-C-1105

CONSOLIDATED WITH

No. 2018-C-1115

STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF
OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.

VERSUS

ALLYSON CAMPBELL, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF OUACHITA

PER CURIAM[*]

Plaintiffs filed the instant suit against certain judges of the Fourth Judicial

District Court as well as a law clerk employed by that court.  Essentially, plaintiffs

allege the law clerk "spoliated, concealed, removed, destroyed, shredded, withheld,

and/or improperly 'handled' court documents" in earlier litigation involving

plaintiffs, and that the judges either aided or concealed these actions.  The judges and

law clerk filed motions to strike certain allegations from plaintiff's petition and also

filed exceptions of no cause of action.  The district court granted the motions to strike

and granted the exceptions of no cause of action.  On appeal, a divided en banc panel

of the court of appeal reversed the motions to strike in part.  The court also reversed

the granting of the exception of no cause of action as to the law clerk, but affirmed

the granting of the exception of no cause of action as to the judges, finding they were

entitled to absolute judicial immunity. *Palowsky v. Campbell*, 2016-1221 (La. App.

1 Cir. 4/11/18), 249 So.3d 945.  We granted and consolidated applications for

---

[*]  Retired Judge Michael Kirby appointed Justice ad hoc,  sitting for Clark, J., recused.

certiorari filed by the law clerk and judges. *Palowsky v. Campbell*, 2018-1105 c/w 2018-C-1115 (La. 12/3/18), ___ So.3d ___.

Considering the highly unusual and specific facts of this case, the court of appeal erred in finding the judges were entitled to absolute judicial immunity. Accepting the facts as alleged in the petition as true for purposes of the exception of no cause of action, we find plaintiff's allegations regarding the judges' supervision and investigation of the law clerk's activities arise in the context of the judges' administrative functions, rather than in the course of their judicial or adjudicative capacities. In *Forrester v. White*, 484 U.S. 219, 229 (1988), the United States Supreme Court held that a judge's exercise of administrative functions, such as "supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system," but such administrative decisions "were not themselves judicial or adjudicative." Therefore, accepting on the well-pleaded allegations of plaintiff's petition, absolute judicial immunity would not apply, and plaintiff is able to state a cause of action against the judges.

In reaching this conclusion, we emphasize that we express no opinion on whether plaintiff can prove these allegations. Moreover, our opinion today should not be read as undermining or eroding the strong principles of absolute judicial immunity which are firmly established in our jurisprudence. Rather, we merely hold that under the narrow and specific parameters of plaintiff's petition, plaintiff has alleged sufficient facts to state a cause of action against the judges.

Accordingly, we reverse the judgment of the court of appeal insofar as it dismissed plaintiff's claims against the judges with prejudice. In all other respects, we find no error in the court of appeal's judgment and therefore affirm the remaining

portions of that judgment.

## DECREE

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it dismisses plaintiff's claims against the defendant judges with prejudice. The exception of no cause of action filed by these defendants is hereby denied. In all other respects, the judgment of the court of appeal is affirmed. The case is remanded to the district court for further proceedings.

SUPREME COURT OF LOUISIANA

No. 2018-C-1105

CONSOLIDATED WITH

No. 2018-C-1115

STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF
OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.

VERSUS

ALLYSON CAMPBELL, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF OUACHITA

**JOHNSON, Chief Justice, concurs in part, dissents in part, and assigns reasons.**

While I agree with the majority that the law clerk employee is not entitled to immunity, I respectfully dissent on the issue of judicial immunity. A judge has immunity from civil liability when sued for actions taken pursuant to his or her judicial authority. While this immunity is not absolute since our jurisprudence recognizes that a judge is not immune from liability for non-judicial acts, namely the administrative acts needed to operate a court, the allegations against these judges are properly classified as acts done in their judicial capacities. As such, I find the judges are not subject to civil liability for their actions, but the plaintiff would have recourse to seek review of the judges' actions in the underlying case from the court of appeal and this court, or by filing a complaint with the Judiciary Commission regarding the judges' actions.

1

06/26/19

# SUPREME COURT OF LOUISIANA

## NO. 2018-C-1105

## CONSOLIDATED WITH

## NO. 2018-C-1115

## STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.

## VERSUS

## ALLYSON CAMPBELL, ET AL.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FIRST CIRCUIT, PARISH OF OUACHITA*

**WEIMER, J.**, concurring.

I concur with the majority's finding that neither the law clerk nor the judges at her court are immune from this lawsuit alleging the law clerk purposely destroyed and hid documents relevant to the plaintiff's prior litigation. I write separately because I find that a requirement in earlier cases for a plaintiff to plead "malice or corruption" no longer has a place in the law of judicial immunity. Instead of requiring a plaintiff to enter the murky realm of ascertaining and pleading a judge's motivation, the jurisprudence has evolved such that the function of the judge's behavior is the touchstone for immunity. If the challenged behavior stems from a judicial function, the judge is immune from suit. If the challenged behavior is outside a judicial function, immunity does not apply.

Judicial immunity has long been a jurisprudential construct in Louisiana. This court, in **Berry v. Bass**, 102 So. 76, 81 (La. 1924), reviewed the prior case law and stated that when judges "have exercised their functions in good faith, without malice

or corruption, they should not be held liable for errors of judgment." Over the years, the significance of allegations of malice and corruption slightly changed. For example, in **Moore v. Taylor**, 541 So.2d 378, 381 (La.App. 2 Cir. 1989), the court suggested allegations of malice and corruption have their place within a two-part test: (1) the plaintiff must show the judge acted outside his judicial capacity and (2) even if the judge "has technically acted outside his jurisdiction and contrary to law, he will remain protected unless his actions were based on malice or corruption."

While the jurisprudential doctrine of judicial immunity in Louisiana initially drew solely from our state's cases (see, e.g. **Berry**, 102 So. at 79-81 (collecting cases)), by the time **Moore** was decided, it was recognized that "[t]he Louisiana jurisprudence on judicial immunity mirrors the federal doctrine." **Moore**, 541 So.2d at 381. Nearly contemporaneous with **Moore**, the U.S. Supreme Court in **Forrester v. White**, 484 U.S. 219, 228-29 (1988), ruled that administrative decisions are outside the scope of judicial immunity. Furthermore, shortly after **Moore**, the United States Supreme Court grappled again with the extent of judicial immunity. See **Mireles v. Waco**, 502 U.S. 9 (1991).

In **Mireles**, the Court examined the significance of "bad faith or malice", which is phraseology substantially the same as the requirement that had evolved in Louisiana cases to prove a judge had acted with "malice or corruption." See **Moore**, 541 So.2d at 381. The **Mireles** Court ruled that "judicial immunity is not overcome by allegations of bad faith or malice." **Mireles**, 502 U.S. at 11. The Court explained that "the existence of" bad faith or malice "ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* The Supreme Court recognized that avoiding the necessity for judges to explain their actions and decisions in discovery in all but the most narrow set of cases is a major purpose of judicial immunity. See

2

*Id.* at 11 ("Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."). Our own jurisprudence contains a similar recognition of the importance of freeing judges from litigation, as long ago this court ruled: "On the highest grounds of necessity and public policy judges cannot be held liable for acts done by them in their judicial capacity" and this court logically connected judges with other "executive officers of the court" who "cannot be sued for acts which they do in obedience to the orders of the court appointing them." **Killeen v. Boland, Gschwind Co.**, 102 So. 672, 675 (La. 1924) (on reh'g).

Again recalling in modern times that our state courts have taken cues from the federal jurisprudence, I believe the time has arrived to put to words what the majority of this court now tacitly recognizes from this case: requiring a plaintiff to plead "malice or corruption" to overcome judicial immunity is an archaic requirement inconsistent with the goals of judicial immunity. Instead of requiring a plaintiff to enter the murky realm of pleading and later embarking on extensive discovery to prove a judge's motivation, the jurisprudence has evolved such that the function of–not the motivation for–a judge's behavior has become the touchstone for immunity. See **Forrester**, 484 U.S. at 227 ("immunity is justified and defined by the *functions* it protects and serves."). On one hand, the jurisprudence dictates that if the challenged act/omission stems from a judicial function, the judge is immune from suit. On the other hand, if the challenged act/omission is outside a judicial function, immunity does not apply. See *Id.* (explaining "immunity is appropriate" for judicial acts, but not for "acts that simply happen to have been done by judges.").

The Supreme Court has developed a two-factor test for determining whether an act relates to a judicial function. "[T]he factors determining whether an act by a

3

judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." **Stump v. Sparkman**, 435 U.S. 349, 362 (1978).

The allegations here are most unusual; therefore, these factors should be regarded as guideposts to assist in analysis. I find the district court's striking from Mr. Palowsky's petition various allegations relating to payroll fraud by the law clerk to be consistent with the **Stump** guideposts. A cause of action in favor of Mr. Palowsky for payroll fraud is simply non-existent; Mr. Palowsky alleges no harm came to him personally from the alleged payroll fraud. A cause of action for the provisions of his petition that have not been struck is extremely limited, if it exists at all. The allegations that the clerk thwarted Mr. Palowsky's litigation by sabotaging the presentation of pleadings to judges are allegations that narrowly avoid immunity, in my view, as being outside a judicial function. Indeed, there is much to commend in my learned colleague's dissent, which finds the connection between the clerk's alleged misdeeds and injury to Mr. Palowsky's other litigation is a connection that justifies judicial immunity. However, I find the allegations of misdeeds to be such that accepting them as true, as we must for present purposes, the clerk essentially severed a connection between herself and a judicial function. The alleged destruction and concealment of documents essentially would have precluded judicial work. If a court is a metaphorical temple of justice, the allegations here are essentially that the clerk's alleged destruction and concealment of documents closed the door to one litigant, allowing only the prayers of the other litigant to reach the decision makers inside.

While the **Stump** guideposts are placed such that another case involving a law clerk could certainly be decided differently, the allegations here that the law clerk essentially precluded the trial court from engaging in some of its most basic judicial functions, like evaluating pleadings, are such that do not justify judicial immunity.

For similar reasons, I find that the district court judges are not immune from certain allegations outside their judicial function. Specifically, as identified by one of my learned colleagues on the appellate court, "the alleged failure to 'supervise' [the law clerk] in this context is more akin to an administrative responsibility." **Palowsky v. Campbell**, 16-1221, p. 2 (La.App. 1 Cir. 4/11/18), 249 So.3d 945, 984 (Crain, J., agreeing in part and dissenting in part). Also, and with the caveat that all allegations must be accepted as true for purposes of evaluating an exception of no cause of action, the petition contains allegations that the judges essentially conspired to cover up the law clerk's destruction of public records, which facilitated the records not being considered. These allegations "arguably satisfy the essential elements of a crime, namely injuring public records, then concealing it." See La. R.S. 14:132; see also La. R.S. 14:25. The doctrine of judicial immunity does not shield judicial actors from civil liability for criminal acts committed outside the judicial function. See **Mireles**, 502 U.S. at 9-10 n.1.

To my learned colleague's observations, I add the following. Daily, judges, often assisted by law clerks, address issues from litigants who perceive they have been wronged, have actually been wronged, have been accused of wrongs, or have actually committed wrongs. The judicial system tasks judges, often aided by law clerks, with resolving these matters and making the right decisions. This goal is often elusive, given the many competing considerations that must be balanced on the scales of justice. In order to function, the judicial system must shield judges and law clerks

5

from being targeted with monetary liability for their actions within their judicial duties by those who are dissatisfied with a decision. See **Forrester**, 484 U.S. at 225 (citing **Bradley v. Fisher**, 13 Wall. 335, 348 (1872)) ("judicial immunity … protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."). While monetary liability is excluded for the exercise of judicial functions, the judicial system provides litigants other safeguards, such as appellate review for what may be regarded as errors or "mistakes," or a referral to the disciplinary systems for judges and attorneys who commit misconduct. See **Forrester**, 484 U.S. at 227; see also La. Const. art. V, § 25(C); La. Sup. Ct. Rule XIX. Thus, judges and law clerks are not above the law, but are rightfully accountable within the civil justice system-just as any other person-when acting outside their judicial function.

Consistent with these principles, I would find that the plaintiff has pleaded a cause of action against the judges with particularity. Just as fraud must be pleaded with particularity "for … exceptional cases where the full circumstances are needed to afford adequate notice to the opposing litigant," (Revision Comment to La. C.C.P. art. 856), in order to demonstrate why the civil justice system should be employed against a judge or law clerk, the particularity requirement must apply. As this case demonstrates by the recusal of an entire circuit court, it is no routine matter for the civil justice system to adjudicate monetary claims against its judges or law clerks. Therefore, the particularity requirement rightly imposes a responsibility on a claimant to facially justify whatever extraordinary measures may be necessary. Relatedly, La. C.C.P. art. 863 imposes protections, in the form of sanctions, against a claimant submitting spurious pleadings.

6

It must be well-noted that the allegations in this case are just that, allegations. By law, no evidence may be introduced when evaluating an exception of no cause of action. See La. C.C.P. art. 931 ("No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action."). Therefore, we are required by law to accept these allegations as true at this preliminary stage of the proceeding. See **City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.**, 93-0690, p. 28 (La. 7/5/94); 640 So.2d 237, 253 ("In deciding the exception of no cause of action, the court must presume all factual allegations of the petition to be true and all reasonable inferences are made in favor of the non-moving party."). Proof, however, of these allegations is a far different matter, and the party making the allegations will not benefit from any presumption of truth. Rather, the party making the allegations will bear the burden of proving the allegations are true as this matter proceeds.

SUPREME COURT OF LOUISIANA

No. 2018-C-1105

CONSOLIDATED WITH

No. 2018-C-1115

STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF
OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.

VERSUS

ALLYSON CAMPBELL, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF OUACHITA

**Guidry, J., dissents and assigns reasons.**

I respectfully dissent from the court's per curiam opinion holding that the alleged actions and omissions of the defendant judges and law clerk are administrative rather than judicial and finding that neither the judges nor the law clerk are entitled to judicial immunity. Despite numerous allegations contained in Mr. Palowsky's petition and amended petition filed in the present action, Mr. Palowsky has legal standing to pursue only the claims against these defendants that relate to their actions and/or inactions in the separate *Palowsky v. Cork* case. Because those alleged actions/inactions relate to another case pending before the court, they are decidedly judicial in nature. As such, these defendants are entitled to judicial immunity from civil liability.

BACKGROUND

Plaintiff, Stanley Palowsky, is also the plaintiff in a separate case pending before the Fourth Judicial District Court, *Palowsky v. Cork*, No. 13-2059 ("*Cork*"),

in which Mr. Palowsky is suing his business partner.[1] Palowsky's present lawsuit asserts claims for damages as a result of Fourth Judicial District Court law clerk Allyson Campbell's alleged destruction of documents in the *Cork* case. The original petition alleged that Campbell:

> maliciously and intentionally harmed Palowsky and willfully violated his constitutionally protected rights to both due process and access to courts [when] she spoliated, concealed, removed, destroyed, shredded, withheld, and/or improperly 'handled' court documents such as memoranda of law, orders, pleadings, sealed court documents, and chamber copies of pleadings filed with the clerk and hand-delivered to the judge's office.

Palowsky further alleged Campbell "maliciously withheld and concealed documents and pleadings in the trial court as well as from the record that was sent to the Second Circuit Court of Appeal" and that her actions amount to fraud, abuse of process, and a violation of La. R.S. 14:132 (the criminal statute addressing the destruction or alteration of public records), as well as intentional infliction of emotional distress.[2]

In a supplemental and amended petition, Palowsky named as additional defendants Chief Judge H. Stephens Winters and Judges Carl Sharp, Benjamin Jones, J. Wilson Rambo, and Frederic Amman, asserting that the judges were involved in an investigation into a criminal complaint against the Court for payroll fraud involving Campbell. The amended petition states that "Defendant Judges all owe an administrative duty to properly audit, investigate, and report suspected payroll fraud;" that the judges "actively schemed to cover up same;" and that the judges failed to supervise the law clerk. Mr. Palowsky further alleged that Judges

---

[1] In the original Petition for Damages filed in the present case, Mr. Palowsky explains that he appears both individually and as a 50% shareholder and director of Alternative Environmental Solutions, Inc. ("AESI"). AESI is also named a "nominal defendant" in this case, but Mr. Palowsky states that "it would be a vain and useless act for him to demand that AESI bring the present action as the other 50-percent shareholder of AESI is W. Brandon Cork, who … has been sued by Palowsky in a related action."

[2] Mr. Palowsky also alleged Ms. Campbell had a history of payroll fraud, as she was repeatedly absent from work and posted several pictures on Facebook indicating she did her job in restaurants or bars, often while drinking alcohol; that she had a history of destroying documents in other litigants' cases; and that 52 writ applications, which had been missing for more than a year, were discovered in Ms. Campbell's office, but she was never reprimanded.

Amman, Sharp, and Rambo committed payroll fraud in certifying her timesheets and records for payroll and in covering up the scheme, and that they violated multiple Canons of the Code of Judicial Conduct. As a result, Mr. Palowsky claims he is entitled to be compensated for any and all damages that he and his company have suffered.

Ms. Campbell and defendant judges filed separate exceptions of no cause of action. The trial court granted Ms. Campbell's and the judges' exceptions, agreeing that Mr. Palowsky's claims for civil damages were barred by the doctrine of absolute judicial immunity.

Mr. Palowsky appealed. A majority of the First Circuit,[3] *en banc*, upheld the trial court's ruling as to the defendant judges but reversed the trial court's ruling as to the law clerk, finding that she was not entitled to judicial immunity and overruling her exception of no cause of action.

Mr. Palowsky and Ms. Campbell filed writ applications in this court seeking review of the court of appeal's ruling. This court granted both writ applications and heard oral argument to determine whether the doctrine of judicial immunity applies to bar Mr. Palowsky's claims against Ms. Campbell and/or the defendant judges.

APPLICABLE LAW

*Judicial Immunity*

The United States Supreme Court consistently has recognized a judge's absolute immunity from civil liability when he or she is sued for actions taken pursuant to his or her judicial power and authority. "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (citing *Bradley v. Fisher*, 13 Wall.

---

[3] Ordinarily this matter would have been appealed to the Second Circuit Court of Appeal, but the judges of the Second Circuit recused themselves. This Court transferred Mr. Palowsky's appeal to the First Circuit Court of Appeal for review.

335, 20 L.Ed. 646 (1872)). Two exceptions exist when applying the doctrine of judicial immunity, however:

> First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227-229, 108 S.Ct., at 544-545; *Stump v. Sparkman*, 435 U.S., at 360, 98 S.Ct., at 1106. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356-357, 98 S.Ct., at 1104-1105; *Bradley v. Fisher*, 13 Wall., at 351.

*Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 206, 116 L.Ed.2d 9 (1991). More succinctly, administrative decisions, even those necessary for the functioning of the court, have not been regarded as judicial acts. *Forrester*, 484 U.S. at 228.

On the other hand, when judicial acts performed within a judge's jurisdiction are committed "with malice," courts have granted immunity. The Supreme Court in *Pierson* stated:

> This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' [Citations omitted.]

386 U.S. at 554. *See also Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991); *Dellenbach v. Letsinger*, 889 F.2d 755, 759 (7th Cir. 1989); *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 2736-39, 73 L.Ed.2d 396 (1982) (allegations of malice are insufficient to overcome qualified immunity).

Louisiana has likewise recognized that judges acting within the scope of their subject matter jurisdiction cannot be held liable for acts done in their judicial capacities. *Killeen v. Boland, Gschwind Co.*, 157 La. 566, 574, 102 So. 672 (1924); *see also Knapper v. Connick*, 96-0434, p. 5 (La. 10/15/96), 671 So.2d 944, 947 ("[W]e have harmonized our own state immunity rules with federal immunity principles in the past."). To that end, this court has defined the broad nature of

absolute judicial immunity as attaching "to *all acts* within a judge's jurisdiction, even if those acts can be shown to have been performed with malice, in order to insure that all judges will be free to fulfill their responsibilities without the threat of civil prosecution by disgruntled litigants." *Knapper*, 681 So.2d at 946 (emphasis added). "[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error … or was in excess of his authority.' " *Mireles*, 502 U.S. at 12-13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978)).

Absolute immunity is not limited strictly to judges, however. "The concern for the integrity of the judicial process underlying the absolute immunity of judges also is reflected in the extension of absolute immunity to 'certain others who perform functions closely associated with the judicial process.'" *Oliva v. Heller*, 839 F.2d 37, 39 (2nd Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985)). To determine who is covered by an extension of judicial immunity, the Supreme Court follows a functional approach, looking not to the title of the person performing the action but to the nature of the responsibilities being performed. *Oliva*, 839 F.2d at 39.

Courts have recognized absolute immunity on behalf of a law clerk when the law clerk's actions are substantially intertwined with those of a judge who is acting in a judicial capacity and with proper jurisdiction. The *Oliva* court, affirming the district court's finding of judicial immunity for both the law clerk and the judge, agreed that the duties of a law clerk are closely intertwined with the work of the judge:

> [T]he work of judges' law clerks is entirely [judicial in nature]. Law clerks are closely connected with the court's decision-making process. Law clerks are "sounding boards for tentative opinions and legal researchers who seek the authorities that affect decisions. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be." *Hall v. Small Business Administration*, 695 F.2d 175, 179 (5th Cir. 1983). Moreover, the work done by law clerks is supervised, approved, and adopted by the judges who initially authorized it. A judicial opinion is not that of the law clerk, but of the judge. Law clerks are simply extensions of the judges at whose pleasure they serve.

*Oliva*, 839 F.2d at 40 (quoting *Oliva v. Heller*, 670 F.Supp. 523, 526 (S.D.N.Y. 1988)).

In *Mitchell v. McBryde*, 944 F.2d at 230, the Fifth Circuit Court of Appeals found absolute judicial immunity from a suit alleging a judge had maliciously conspired with his law clerk to set aside a default judgment that plaintiffs had obtained in a prior lawsuit. Citing *Oliva*, *supra*, the *Mitchell* court agreed that judicial immunity, as applied to the judge, extended to the law clerk as well. *See also Little v. Hammond*, 774 Fed.Appx. 748, 750 (3rd Cir. 2018) (judge and law clerk both entitled to judicial immunity from litigant's 1983 action alleging conspiracy related to his criminal and child custody proceedings); *Jackson v. Houck*, 181 Fed.Appx. 372, 373 (4th Cir. 2006) (affirming district court's dismissal of plaintiff's suit after finding judge and law clerk were entitled to absolute judicial immunity from civil rights suit); *Bradley v. U.S.*, 84 Fed.Appx. 492, 493 (6th Cir. 2003) (judges, law clerk, and court clerk were entitled to judicial immunity in prisoner's civil rights suit alleging they violated his right of access to courts, as they were acting "in their judicial and quasi-judicial duties").

*No Cause of Action and Standing*

The peremptory exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. La. C.C.P. arts. 681 and 927; *Foti v.*

*Holliday*, 09-0093, p.5 (La. 10/30/09), 27 So.3d 813, 817. All well-pleaded allegations of fact are accepted as true, and all doubts are resolved in favor of sufficiency of the petition. La. C.C.P. art. 865; *Kuebler v. Martin,* 578 So.2d 113, 114 (La.1991). The burden of demonstrating that a petition fails to state a cause of action is upon the mover. *Ramey v. DeCaire,* 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 119.

The sufficiency of a petition subject to an exception of no cause of action is a question of law. *Fink v. Bryant,* 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349. A *de novo* standard is applied to the review of legal questions, wherein this court renders a judgment based on the record without deference to the legal conclusions of the lower courts. *Cleco Evangeline, LLC v. Louisiana Tax Comm'n,* 01-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353.

A trial or appellate court may raise issues of standing on its own motion. La. C.C.P. art. 927 B; *Turner v. Busby*, 03-3444, p. 4 (La. 9/9/04), 883 So.2d 412, 415-16. "The predicate requirement of standing is satisfied if [the litigant] has an interest at stake in litigation which can be legally protected." *In re: Melancon*, 05-1702, p. 9 (La. 7/10/06), 935 So.2d 661, 668. "The standing inquiry requires careful examination of whether a particular litigant is entitled to an adjudication of the particular claim it has asserted." *In re Matter Under Investigation*, 07-1853, p. 10 (La. 7/1/09), 15 So.3d 972, 981 (citing *Melancon*, 935 So.2d at 668). When the facts alleged provide a remedy to someone, but the litigant who seeks relief is not the person in whose favor the law extends the remedy, that litigant is without standing. *Melancon*, 935 So.2d at 668.

ANALYSIS

Mr. Palowsky alleged that the law clerk "spoliated, concealed, removed, destroyed, shredded, withheld, and/or improperly 'handled' court documents" in the *Cork* litigation and that the judges covered up these actions. Although his petition

includes additional allegations unrelated to *Cork*, Mr. Palowsky has standing in the present case only with regard to the allegations related to the *Cork* litigation. Stated differently, he has no standing to assert claims against these defendants for alleged payroll fraud, nor for any other claims separate from the *Cork* litigation, because he cannot demonstrate that he has a particular interest outside of the *Cork* litigation. "A plaintiff must have a real and actual interest in the action he asserts, LSA-C.C.P. art. 681. Without a showing of some special interest … separate and distinct from the interest of the public at large, plaintiff will not be permitted to proceed." *League of Women Voters v. City of New Orleans*, 381 So.2d 441, 447 (La. 1980).

The claims against the law clerk and judges for which Mr. Palowsky has standing arise from his alleged damages sustained from their handling of the *Cork* litigation. The very allegations that he asserts against the law clerk—destruction of court filings—arise as a result of the judicial functions being performed in conjunction with that lawsuit. Mr. Palowsky's additional allegations, such as payroll fraud, are concerns of the public at large but do not state a claim that is particular to Mr. Palowsky.

The majority's determination that the law clerk's actions in a case assigned to the law clerk's judge are "administrative" ignores the broad scope of judicial immunity and creates a slippery slope by which courts will have to parse every action or inaction in the cases assigned to them to determine whether such action (or inaction) is judicial, administrative, or something else. "[T]he opening of any inroads weakening judicial immunity could have the gravest consequences to our system of justice." *McAlester v. Brown*, 49 F.2d 1280, 1283 (5th Cir. 1972).

Similarly, to the extent Mr. Palowsky has standing to assert allegations that the judges failed to supervise the law clerk, the alleged lack of supervision falls within the judges' judicial capacity. It is not necessary to determine whether the additional allegations of misconduct asserted against these defendants, but unrelated

to *Cork*, are judicial or administrative, as Mr. Palowsky has no standing to pursue these claims.

Furthermore, I find the present facts distinguishable from the facts in *Forrester*, a case in which the U.S. Supreme Court held that a judge who allegedly demoted a probation officer on the basis of her sex was not entitled to judicial immunity, as the judge was acting in an administrative capacity rather than a judicial capacity. 484 U.S. at 229. In stark contrast to the employment claim asserted in *Forrester*, the claims for which Mr. Palowsky has standing are grounded in the defendants' judicial functions.

My views regarding the broad scope of judicial immunity and its application to these facts in no way indicates that I wish to turn a blind eye to Mr. Palowsky's allegations. Every litigant in any court of law is entitled to justice dispensed by a fair and impartial judiciary. If these defendants failed Mr. Palowsky in that regard, they may be subjected to other discipline, including potential criminal charges for destruction of public records. But I cannot say that the allegations for which Mr. Palowsky has standing, as ill-considered and distasteful as they may be, justify the erosion of judicial immunity, which has been recognized by state and federal courts for more than a century.

Accordingly, I would reverse the portion of the court of appeal's decision that overruled Ms. Campbell's exception of no cause of action based on judicial immunity and affirm the court of appeal's ruling sustaining the judges' exception of no cause of action. Under these facts, these defendants are absolutely immune from suit.

06/26/19

# SUPREME COURT OF LOUISIANA

# No. 2018-C-1105

# CONSOLIDATED WITH

# No. 2018-C-1115

# STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.

# VERSUS

# ALLYSON CAMPBELL, ET AL.

# ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF OUACHITA

**Crichton, J., dissents and assigns reasons.**

I agree with the majority's conclusion that the alleged actions at issue are outrageous. However, in my view, the per curiam conflicts with the established principle of judicial immunity, which is based in over 150 years of federal and state jurisprudence and is foundational to the rule of law. It also risks eroding the independence of the judiciary and could adversely affect the public interest, including the paramount interest of protection of the public and the impartial administration of justice. *See*, *e.g.*, *Knapper v. Connick*, 96-0434, p.3 (La. 10/15/96), 681 So. 2d 944, 946 ("Absolute immunity attaches to all acts within a judge's jurisdiction, even if those acts can be shown to have been performed with malice, in order to insure that all judges will be free to fulfill their responsibilities without the threat of civil prosecution by disgruntled litigants."); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[A judge] should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to

intimidation."); *Bradley v. Fisher*, 80 U.S. 335, 347 (1871) (explaining that the public is "deeply invested" in the principle of judicial immunity, "which indeed exists for their benefit, and was established in order to secure the independence of the judges, and prevent them being harassed by vexatious actions").[1] I therefore dissent, for the reasons assigned by Justice Guidry.

I write separately from Justice Guidry solely to note that judicial immunity is absolutely not a "get out of jail free" card for any of the parties herein, nor should this dissent be construed to condone the disturbing allegations against the rogue law clerk and the judges. Proper application of the immunity doctrine here would immunize the clerk and judges only from **civil liability**, *i.e.*, payment of monetary damages to the plaintiffs, and leaves open other remedies against them. In addition to losing her job, assuming, *arguendo*, that the relevant time limitations for prosecution have not elapsed, the law clerk's actions may meet the elements of a violation of criminal law, the consequences of which could include a fine and/or imprisonment for a felony crime. *See* R.S. 14:132 (Injuring Public Records). The judges could also be subject to prosecution for their role in this sordid affair. *See* R.S. 14:25 (Accessory After the Fact). Additionally, the judges may be subject to discipline by the appropriate authorities for violation of the judicial canons, which could include suspension without pay or even removal from office. *See*, *e.g.*, Canons 2, 3. And, of course, they may face consequences at the ballot box. *See Randall v. Brigham*, 74 U.S. 523 (1868) ("If faithless, if corrupt, if dishonest, if partial, if oppressive or arbitrary, they may be called to account by impeachment, and removed

---

[1] Indeed, in my view, it can be no other way. Judicial immunity is "immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity therefore prevents judges from being hauled into court as defendants, which could subject the entirety of their decision-making processes to virtually unlimited discovery. *See Rehberg v. Paulk*, 566 U.S. 356, 370 ("Judges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid.") (quoting *Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985)).

2

from office. . . . But responsible they are not to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation. . . .”); *Bradley v. Fisher*, 80 U.S. 335, 354 (1871) (“[F]or malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed.”).

The defendants may therefore still face significant repercussions for their disgraceful conduct. However, in my view, those repercussions cannot include civil liability. In finding otherwise, I believe the per curiam is an aberration that could result in the erosion of the principle of immunity, which is intended to protect the public interest and the independence of the judiciary.

3

**SUPREME COURT OF LOUISIANA**

**No. 2018-C-1105**

**CONSOLIDATED WITH**

**No. 2018-C-1115**

**STANLEY R. PALOWSKY, III, INDIVIDUALLY, AND ON BEHALF OF ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.**

**VERSUS**

**ALLYSON CAMPBELL, ET AL.**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF OUACHITA**

**Kirby, J., ad hoc, concurs and assigns reasons.**

I fully concur with the rationale and holding of the majority per curiam. As stated therein, at this stage of these proceedings, this result is required by the decision of the United States Supreme Court in *Forrester v. White* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). In her opinion for a unanimous court, Justice O'Connor recognized the inherent difficulty in distinguishing between "truly judicial acts" entitled to immunity and those "that simply happen to have been done by judges" for which immunity is not appropriate. The vexation comes from the fact, also noted by Justice O'Connor, that the court has never precisely defined the acts entitled to judicial immunity, deferring instead to a "functional" analysis where the nature of the function performed, not the identity of the actor, governs the immunity analysis.

1

It is worth noting that Canon 3 of the Louisiana Code of Judicial Conduct, clearly recognizes the dichotomy between adjudicative and administrative duties. Specifically, Canon 3 (B) captioned "*Administrative Responsibilities*" provides:

> (1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, . . ..
>
> (2) A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.
>
> (3) * * *
>
> (4) A judge shall not make unnecessary appointments. A judge should exercise the power of appointment impartially and on the basis of merit. A judge should avoid appointments which tend to create the appearance of impropriety. A judge shall not approve the compensation of appointees beyond the fair value of services rendered . . ..

In my view the well pleaded facts of the petition at issue here merely present the reverse factual scenario confronting the *Forrester*, *supra,* court. There, a judge was sued for allegedly wrongfully discharging an employee. Here the gravamen of the complaint is that the defendants *did not* terminate an employee who was performing her duties improperly.[1] Admittedly, La. R. S. 13:700 authorizes each

---

[1] For example: Paragraphs 9 and 10 of the petition allege the law clerk is not a licensed attorney, implicating Canon 3 (B) (2), relative to requiring staff to maintain professional competence, Canon 3 (B) (4) relative to judges exercising the power of appointment impartially based upon merit and not approving compensation beyond the fair value of services rendered. Paragraph 28 alleges that the law clerk has a history of committing payroll fraud and destroying or concealing documents, implicating Canon 3 (B) (2) relative to requiring staff to refrain from manifesting bias or prejudice in the performance of their official duties and Cannon 3 (B) (4) relative to a judge making appointments that create the appearance of impropriety. Paragraphs 32 through 35 and 38, alleging the clerk's newspaper article, "A modern guide to handle your scandal," the complaint made to the judges who initiated an investigation and verified the facts but took no disciplinary or remedial action, implicating Canon 3 (B) (1) relative to maintaining professional competence in judicial administration, Canon 3 (B) (2) relative to requiring staff to observe standards of fidelity and diligence and to refrain from manifesting bias or prejudice in the performance of their official duties and Canon 3 (B) (4) regarding appointments that create the appearance of impropriety. Paragraphs 45, 46, 48 and 50 alleging the clerk's spoliated, destroyed and withheld records which certain defendants actively worked to cover up, again implicating Canon 3 (A) (1) regarding judges discharging their administrative responsibilities without bias or prejudice, Canon 3 (B) (2) regarding requiring staff to observe standards of fidelity and competence applicable to judges and to refrain from manifesting bias or prejudice in the performance of their duties and Canon 3 (B) (4) regarding judges avoiding appointments that create the appearance of impropriety.

judge of the Fourth Judicial District Court to hire a law clerk "to perform such research duties" as the judge may assign. However, none of plaintiff's allegations against the law clerk pertain to her statutorily authorized duties. Plaintiff's litany of her alleged past malefactions is not to assert a claim for damages resulting from them, but rather to demonstrate the length of time over which the alleged excesses occurred thereby suggesting her employers, who simply happen to have been judges, failed to properly supervise their employee.

Insofar as the law clerk herself is concerned, she is only entitled to immunity when acting at the direction of a judge or pursuant to an established rule of court. *Oliva v. Heller* 839 Fed 2d 37 (2d Cir. 1988) only grants a law clerk immunity when assisting a judge with his judicial functions: "Accordingly, we hold that the defendant, who was clearly assisting the judge in carrying out judicial functions was covered by the doctrine of absolute immunity." *Oliva, supra*, at 40. See also *Johnson v. Parish of Jefferson*, 2009 WL 1808718: "Court employees *who act under the explicit instructions of a judge* 'acts as the arm of the judge and comes with [sic] his absolute immunity,' even if the employees act 'in bad faith or with malice.'" *Williams v. Wood,* 612 F.2d 982, 985 (5th Cir.1980). *Mitchell v. McBryde,* 944 F.2d 229, 230-31 (5th Cir.1991). [Emphasis added.] Likewise, *Guccione v. Parish of Jefferson,* 382 Fed.Appx. 357 (2010), 2010 WL 2465039 teaches:

> The remaining defendants in this lawsuit are the employees of the Louisiana Fifth Circuit Court of Appeal who acted pursuant to the procedures allegedly implemented by the judges. The district court determined correctly that because they were only acting at the express direction of the judges, to assist them in carrying out their judicial functions, those defendants are likewise entitled to absolute judicial immunity with respect to Guccione's claim for monetary damages. *See Mitchell v. McBryde,* 944 F.2d 229, 230–31 (5th Cir.1991).

A careful review of the pleadings reveals no allegation that the law clerk's complained of actions were done pursuant to established court policy or at the direction of a judge in aid of judicial functions. Therefore, she is not entitled to immunity.